The plaintiff alleges that in December, 1917, he was employed by the defendant to do certain work during the year 1918, for which he was to receive $16 a week, fuel and house rent free, together with an increase in wages to be fixed in the following April; that he entered upon and continued in the defendant's service until May, 1918, when he was wrongfully discharged, and that he has suffered damages in the sum of $500. Denying the material (218) allegations of the complaint, the defendant alleges that the plaintiff was employed by the day; that for stated periods he rendered no service; that, careless and neglectful of his duties, he caused the defendant financial loss, and thereby forced the defendant to discharge him from its service.
The issues were answered as follows:
"1. Did the defendant employ the plaintiff under the agreement as alleged in the complaint? Answer: `Yes.'
"2. If so, did the defendant wrongfully and in breach of its agreement discharge the plaintiff, as alleged in the complaint? Answer: `Yes.'
"3. What damage, if any, is the plaintiff entitled to recover of the defendant? Answer: `$1.'
"4. What was the unpaid part of the wages for the year as fixed by the contract? Answer: `$495.'
"5. What was the house and fuel fairly and reasonably worth *Page 231 
that defendant was to furnish plaintiff for the balance of the year after plaintiff's discharge? Answer: `$60.'
"6. What amount of money did the plaintiff earn and receive for the service after his discharge to the end of the year? Answer: `$562.75.'
"7. What was the additional expense, if any, incurred by plaintiff Croom in necessary support of himself and family for balance of the year after his discharge? Answer: `$246.'"
After the jury had answered the remaining issues, his Honor answered the third issue as an inference of law, each party reserving the right to except. His Honor held that the plaintiff was entitled to judgment only for the difference between the amount of the unpaid wages for the year fixed by the contract and of the reasonable worth of the house rent and fuel, to wit, $555 (the sum of the answers of the fourth and fifth issues), and the amount earned by the plaintiff after his discharge, to wit, $562.75 (the answer to the sixth issue); and that as the latter exceeds the former, the plaintiff could recover nothing more than nominal damages for the defendant's breach of its contract. Accordingly, judgment was entered in favor of the plaintiff for $1, as nominal damages, and the cost of the action. Having entered exceptions the plaintiff appealed.
In his complaint the plaintiff alleges that by the terms of the contract he was to be paid $16 a week in part compensation for his services. On the trial there was evidence for the plaintiff tending to show that he was to be paid $15 a week for his personal services and his wife $1 a week for certain (219) services to be rendered by her. His Honor charged the jury that the plaintiff could not recover the amount claimed to be payable on account of the wife's services, and that the plaintiff's wages, if allowed by the jury, could not exceed the rate of $15 a week. To this instruction the plaintiff excepted.
Subject to definite restrictions, the right of a married woman to make an executory contract is governed chiefly by the provisions of C. S., ch. 51. It is not necessary, however, to discuss the meaning or purpose of the several statutes affecting the contractual rights of married women, inasmuch as the contract declared on was executed after the enactment of sections 2507 and 2513, which are controlling in the question under consideration. The practical effect of section *Page 232 
2507 — the Martin Act — is to constitute a married woman a free trader as to all her ordinary dealings, and to invest her with the privileges of suing and being sued alone. Price v. Electric Co.,160 N.C. 450; Lipinsky v. Revell, 167 N.C. 508; Royal v. Southerland,168 N.C. 406; Kirkpatrick v. Crutchfield, 178 N.C. 348. Section 2513 is as follows: "The earnings of a married woman, by virtue of any contract for her personal service, and any damages for personal injuries, or other tort sustained by her, can be recovered by her suing alone, and such earnings or recovery shall be her sole and separate property as fully as if she had remained unmarried."
Counsel for the plaintiff, while advertent to these statutes, urge two objections against their application:
First, that the contract was made with the plaintiff, and the agreement to pay $1 to the wife merely enlarges the amount to be paid to the plaintiff, in view of the implied intention of the parties that the wife, during the plaintiff's temporary absence, should give personal attention to the performance of duties devolving upon him; and in the second place, that as the plaintiff has declared on the defendant's agreement to pay the plaintiff $16 a week, the answer to the first issue indicates that the plaintiff was employed as alleged. We are of opinion that the first objection cannot prevail. The relevant statement in the case on appeal is this: "The evidence of the plaintiff tended to establish the fact that he was to be paid $15 per week and his wife was to be paid $1 per week for certain services to be rendered by her." Nowhere does it appear that the defendant agreed to pay both these amounts to the plaintiff, and in the absence of evidence to this effect the intendment of the law is in conflict with the plaintiff's contention. Nor is the second objection available to the plaintiff. His Honor instructed the jury that the plaintiff, if allowed damages, should be allowed wages only at the rate of $15 a week, and the answer to the first issue must be interpreted (220) with reference to this instruction. S. v. Murphy, 157 N.C. 615; Richardson v. Edwards, 156 N.C. 590; Donnellv. Greensboro, 164 N.C. 332. The first exception is therefore overruled.
The second exception also is untenable. It is directed to the question whether there was sufficient evidence of the defendant's agreement to pay the plaintiff increased wages. The allegation is that the plaintiff was to receive certain compensation "with a raise in wages, to be fixed in April following." There was evidence tending to show that his wages were to be increased in April, and that in May the wages of one employee who had continued in the defendant's service were increased from $2 to $3 a day, and the wages of another about *Page 233 
33 1/2 per cent. But the quantum or measure of increase in the plaintiff's wages was neither alleged nor proved. The court held that the evidence was not sufficient to show an enforceable agreement by the defendant to increase the plaintiff's wages, and the plaintiff duly excepted.
One of the essential elements of every contract is mutually of agreement. There must be neither doubt nor difference between the parties. They must assent to the same thing in the same sense, and their minds must meet as to all the terms. If any portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement. 13 C. J. 264. A contract for service must be certain and definite as to the nature and extent of the service to be performed, the place where, and the person to whom it is to be rendered, and the compensation to be paid, or it will not be enforced. 6 R.C.L. 644. The evidence as to the wages is equally indefinite if it be considered as tending to show an agreement to make a future contract. "Unless an agreement to make a future contract is definite and certain upon the subjects to be embraced therein it is nugatory. Consequently, the acceptance of a proposition to make a contract, the terms of which are to be subsequently fixed, does not constitute a binding obligation. The reason for this rule is that there would be no way by which the court could determine what sort of a contract the negotiations would result in; no rule by which the court could ascertain what damages, if any, might follow a refusal to enter into such future contract on the arrival of the time specified. Therefore, a contract to enter into a future contract must specify all its material and essential terms, and leave none to be agreed upon as a result of future negotiations." 1 Elliott on Contracts, sec. 175 "If no breach of the contract can be assigned which can be measured by any test of damaged from the contract, it has been said to be too indefinite to be enforceable," I Page on Contracts, sec. 28; Elks v. Ins. Co., 159 N.C. 626. In the absence of allegation and proof as to what the increased wages should be, there is no accurate test by which the (221) plaintiff's damages could be measured.
Exceptions three, four, five, and six present but one question, and may be considered together. The court no doubt submitted to the jury the fifth issue and the seventh with the twofold purpose of presenting the conflicting views of the parties as to the measure of the plaintiff's damages, and of determining the entire controversy by one verdict. Upon the trial the plaintiff contended that in answering the third issue as a conclusion of law the court should deduct from the answer to the sixth issue the answer to the seventh, *Page 234 
leaving the net amount of the plaintiff's earnings after his discharge to be deducted from the value of his contract as found in response to the fourth and fifth issues; and the defendant contended that the answer to the seventh issue was immaterial and should be disregarded. His Honor held with the defendant, and these exceptions challenge the correctness of his Honor's ruling.
In 20 A. E. (2 ed.) 37, it is said: "Where the action is brought subsequent to the expiration of the term of employment, the decisions are practically unanimous to the effect that the measure of damages is primafacie the wages for the unexpired portion of the term, this amount to be diminished by such sums as the servant has earned, or might have earned by a reasonable effort to obtain other employment in the same line of business. This proposition is cited with approval in Smith v. Lumber Co.,142 N.C. 26. In Hendrickson v. Anderson, 50 N.C. 247, an overseer, employed upon a special contract for a year, was discharged during the year, and brought suit to recover the entire stipulated sum. This Court said: "The question necessarily arises, What is the amount of the damages which he (the plaintiff) ought to be allowed to recover? The proper answer would seem to be the amount which he has actually sustained in consequence of the defendant's default. It would seem to be a dictate of reason that if one party to a contract be injured by the breach of it by the other, he ought to be put in the same condition as if the contract had been fully performed on both sides. He certainly ought not to be a loser by the fault of the other; nor can he be a gainer without introducing into a broken contract the idea of something like vindictive damages. The true rule, then, is to give him neither more nor less than the damages which he has actually sustained." This case has been approved in Brinkley v. Swicegood,65 N.C. 628; Oldham v. Kerchner, 79 N.C. 112; Markham v. Markham,110 N.C. 356; Smith v. Lumber Co., supra.
In several jurisdictions the doctrine of constructive service has been repudiated, and in its place has been adopted the method of suing for damages for breach of the contract of employment. But the trend of judicial opinion, in analogy to the constructive service idea, seems to be toward regarding the contract price as a (222) material, if not the controlling, element for consideration in the estimation of damages, both in jurisdictions in which the doctrine of constructive service has been repudiated and in those in which it has been retained. 6 L.R.A. (N.S.) 82. In Smith v. LumberCo., supra, Walker, J., says: "If the doctrine of constructive service is illogical, in view of the right of the master to have the damages diminished by showing that the servant engaged in other *Page 235 
business, and consequently was not ready to perform the service, it does not follow that the rule itself as to damages is not a sound one, for other cogent reasons may have been assigned in its support. The employee, by no fault of his own, loses his wages, which are fixed by the contract, and their amount should be the true measure of his damages under the ordinary rule obtaining in the case of other contracts" (pp. 35-36). In jurisdictions in which the contract is held to be the measure of damages for breach of a contract of employment, it is only prima facie so, and where other employment, or the duty to seek other employment, is taken into consideration, the measure of damages suffered by an employee because of a wrongful discharge is the actual injury sustained, or the loss of the value of the contract. Perry v. Simpson, 37 Conn. 520. Here, then, two questions arise: (1) What was the value of the plaintiff's contract with the defendant? (2) In what amount has the value of the contract been impaired by the defendant's breach?
As shown by the answer to the fourth and fifth issues, the jury found the value of the contract to be $555. To what extent has such value been impaired by the breach? Evidently to the extent of the plaintiff's actual loss. The measure of his loss is the difference between the value of the contract and the net amount earned after his discharge.
It has been suggested that the plaintiff, after his discharge, enjoyed advantages not provided in the original contract. He seems also to have received better wages; and if this question was in fact raised upon the trial, we must assume that it was considered in connection with the issues submitted to the jury. It will be observed that the expenses incurred by the plaintiff after his discharge were not elective, but necessary as well as additional to those he would have incurred had the defendant performed the contract. Shall the plaintiff's loss, caused by his wrongful discharge, become the defendant's asset? It would be inequitable to say that the plaintiff shall not abate to the extent of additional and necessary expenses, the amount earned by him after his wrongful discharge. Van Winklev. Satterfield, 23 L.R.A. 855; Pennsylvania Co. v. Dolan, 51 Am. St. R. 300. We hold, then, that the answer to the seventh issue should be deducted from that of the sixth, and the remainder, $316.75, should in turn be deducted from the value of the contract, represented by the sum of the answers to the fourth and fifth issues, and that the answer to the third issue should be $238.25, with (223) interest from the termination of the period of the plaintiff's employment, to wit, 1 January, 1919. 6 L.R.A. (N.S.) 91; Bond v.Cotton Mills, 166 N.C. 20; Chatham v. Realty Co., 174 N.C. 671. *Page 236 
The judgment entered upon the verdict, as herein modified, is affirmed.
Modified and affirmed.
Cited: Dorsett v. Dorsett, 183 N.C. 356; Richardson v. Libes,188 N.C. 113; Hinnant v. Power Co., 189 N.C. 125; Bldg. Co. v. Greensboro,190 N.C. 505; Bryant v. Lumber Co., 192 N.C. 611; Thomas v. Watkins,193 N.C. 632; Thomas v. Realty Co., 195 N.C. 595; Dodds v. Trust Co.,205 N.C. 156; Burton v. Styers, 210 N.C. 233; Sides v. Tidwell,216 N.C. 483; Buford v. Mochy, 224 N.C. 242; Coley v. Dalrymple,225 N.C. 70; Carlisle v. Carlisle, 225 N.C. 467; Hutchins v. Davis,230 N.C. 72; Kirby v. Bd. of Ed., 230 N.C. 626; Williamson v. Miller,231 N.C. 728; Lochner v. Sales Service, 232 N.C. 75; Smith v. Barnes,236 N.C. 178; Goeckel v. Stockley, 236 N.C. 607; Owens v. Kelly,240 N.C. 773; Thomas v. College, 247 N.C. 615; McCraw v. Llewellyn,256 N.C. 216; Young v. Sweet, 266 N.C. 625.