LEWIS-BRADY BUILDERS SUPPLY, INC. v. OHAN A. BEDROS AND WIFE, ARTEMIS B. BEDROS; AND W. P. GRANT, INC.

No. 7616SC442

(Filed 19 January 1977)

Laborers' and Materialmen's Liens § 3— breach of contract by prime contractor — damages exceeding amount owed to contractor — subcontractor's claim against owner

Where the architect for a home under construction withheld a $15,284.66 progress payment to the prime contractor for reasons specified in the contract, the contractor breached the contract by discontinuing construction of the home, the lowest bid reasonably obtainable to complete the home according to the original plans and specifications was $2,141.77 in excess of the original contract price with the contractor, and the owner was required to expend all of the funds that might otherwise have become due to the contractor under the original contract as well as an additional $2,141.77, the damages to the owner from the contractor's breach were in excess of all amounts otherwise due to the contractor under the original contract, and there were therefore no funds owed by the owner to the contractor to which a first tier subcontractor's lien under G.S. 44A-18(1) could attach.

APPEAL by plaintiff from *Braswell, Judge.* Judgment entered 30 January 1976 in Superior Court, ROBESON County. Heard in the Court of Appeals 12 October 1976.

On 10 April 1974 defendant Bedros, as owner, and defendant Grant, as contractor, entered into a contract totaling $87,000.00 for the construction of a residence for owner. Contractor purchased some materials and supplies for owner's residence from plaintiff Lewis-Brady, as first tier subcontractor.

Contractor billed and received monthly progress payments from owner under the contract for the months of April through October 1974 in the total sum of $42,822.77. On 1 December 1974 contractor submitted its billing for the month of Novem-

ber 1974 in the sum of $15,284.66. On 6 December 1974 owner's architect approved this billing for payment. However, because of contact with one or more first tier subcontractors suggesting that the contractor had not paid for materials and supplies furnished to owner's residence, owner's architect physically retrieved and withheld the approval of payment to contractor for the November billing. Owner did not pay contractor for the November billing. On 13 December 1974 plaintiff, as a first tier subcontractor, filed with owner a "Notice of Claim of Lien" conforming to G.S. 44A-19 (b) for the sum of $13,366.98. Contractor did no work on owner's residence after 13 December 1974.

Between 13 December and 21 December 1974 owner and owner's architect negotiated with contractor in an effort to obtain completion of owner's residence in accordance with the contract. On or about 21 December 1974 contractor advised owner that it would not continue the construction of owner's residence. Thereafter owner sought bids for completion of the residence and entered into a contract on 3 February 1975 with the lowest bidder for completion of the residence in accordance with the original plans and specifications. The low bid for completion brought the total cost of owner's residence to $89,-141.77, $2,141.77 more than the original contract price.

The trial court rendered judgment for the plaintiff, first tier subcontractor, against original contractor for $13,366.98, but denied recovery by plaintiff against owner. Plaintiff appealed.

*Page & Britt, by W. Earl Britt, for plaintiff, first tier subcontractor.*

*Lee and Lee, by Helen H. Madsen, Franklin V. Adams, and Woodberry L. Bowen, for defendants Bedros, owner.*

BROCK, Chief Judge.

Many of the findings of fact and conclusions of law by the trial court and many of the arguments advanced by appellant are not germane to a determination of the pivotal issue presented by this appeal. We shall, therefore, discuss only the issue that we conclude is dispositive.

Plaintiff relies upon Part 2, Article 2, Chapter 44A of the General Statutes and, in particular, G.S. 44A-18(1) and (6)

and G.S. 44A-20(a) and (b) for his right to recover from owner.

General Statute 44A-18(1) provides: "A first tier subcontractor [plaintiff in this case] who furnished labor or materials at the site of the improvement shall be entitled to a lien upon funds which are owed to the contractor with whom the first tier subcontractor dealt and which arose out of the improvement on which the first tier subcontractor worked or furnished materials."

General Statute 44A-18(6) provides: "The liens granted under this section are perfected upon the giving of notice in writing to the obligor [owner in this case] as hereinafter provided and shall be effective upon the receipt thereof by such obligor."

General Statute 44A-20(a) provides: "Upon receipt of the notice provided for in this Article the obligor shall be under a duty to retain any funds subject to the lien or liens under this Article up to the total amount of such liens as to which notice has been received."

General Statute 44A-20(b) provides: "If, after the receipt of the notice to the obligor, the obligor shall make further payments to a contractor or subcontractor against whose interest the lien or liens are claimed . . . and in addition the obligor shall be personally liable to the person or persons entitled to liens up to the amount of such wrongful payments. . . . "

The "Notice of Claim of Lien" given on 13 December 1974 by plaintiff to owner complied with the requirements of G.S. 44A-19(b). The central and dispositive issue is whether there were any funds held by owner on 13 December 1974 to which a lien in plaintiff's favor could attach. Under G.S. 44A-18(1), quoted above, a lien in favor of plaintiff could attach only to funds *owed* by owner to contractor. If there were no funds owed by owner to contractor, and none were thereafter to become due, G.S. 44A-20(a) would impose no duty upon owner, and it follows that G.S. 44A-20(b) would impose no personal liability upon owner.

On 6 December 1974 owner's architect approved a progress payment to contractor in the amount of $15,284.66. The architect physically retrieved and withheld the approval of the $15,284.66 progress payment under the express terms of the

Contract between owner and contractor. Subparagraph 9.5.1 of the contract provides, in pertinent part: "The Architect may also decline to approve any Applications for Payment or, because of subsequently discovered evidence or subsequent inspections, he may nullify the whole or any part of any Certificate for Payment previously issued, to such extent as may be necessary in his opinion to protect the Owner from loss because of:

. . .

".2 third party claims filed or reasonable evidence indicating probable filing of such claims,

".3 failure of the Contractor to make payment properly to Subcontractors or for labor, materials or equipment."

Subparagraph 9.5.2 of the contract provides: "When the above grounds in Subparagraph 9.5.1 are removed, payment shall be made for amounts withheld because of them."

Plaintiff seems to argue that the 6 December 1974 approval of payment to contractor constitutes irrebuttable evidence that owner owed contractor $15,284.66 which had not been paid on 13 December 1974 when plaintiff filed with owner his "Notice of Claim of Lien" for $13,366.98. We disagree.

The amount owed by owner to the contractor at any particular time must be determined in the light of existing circumstances and the contract between owner and contractor. The architect, as owner's agent under the contract, withheld the $15,284.66 progress payment for reasons specified in the contract. Therefore, contractor had no right to discontinue construction of owner's residence. When contractor did refuse to continue construction of owner's residence, he breached his contract with owner, and the amount due from owner to contractor had to be determined in the light of damages suffered by owner from contractor's breach. Owner had the duty to reasonably mitigate damages, which he did by completing the construction at the lowest bid reasonably attainable. Owner was entitled to set off any amount he may have owed contractor against the damages caused by contractor's breach of the contract. Only after these developments could it be determined what amount, if any, owner owed contractor over and above the $42,822.77 paid by owner to contractor through October 1974.

In this case the lowest bid reasonably obtainable to complete owner's residence according to the original plans and specifica-

tions was $2,141.77 in excess of the original contract price with contractor. Therefore, owner was required to expend all of the funds that may have otherwise become due under the original. contract with contractor as well as an additional $2,141.77. The damages to owner from contractor's breach were in excess of all amounts that might otherwise have become due to the contractor. The trial court so found from competent evidence.

For the reasons stated, the judgment of the trial court is affirmed.

Affirmed.

Judges VAUGHN and MARTIN concur.