WATSON ELECTRICAL CONSTRUCTION CO., Plaintiff v. SUMMIT COMPANIES, LLC, JAMES L. HODGIN; and NANCY T. HODGIN, Defendants

No. COA02-1366

(Filed 21 October 2003)

### 1. Construction Claims— subcontractor against owners— breach of contract

The trial court did not err by granting summary judgment for property owners (the Hodgins) on a subcontractor's breach of contract claim. Plaintiff-subcontractor did not claim that it had a direct contract with the Hodgins, and did not produce evidence that the Hodgins ratified the contract between plaintiff and the general contractor.

### 2. Liens— subcontractor against property owners—claims of general contractor dismissed—no funds available.

Summary judgment was properly granted for the property owners on a subcontractor's lien claims against the property owners. The lien on real property was properly dismissed because an arbitrator had determined that the general contractor (Summit) had breached the contract and dismissed its lien, and the subcontractor is bound by any defense available against the contractor. The lien on funds owed to the general contractor was properly dismissed because the arbitrator determined that, after a set-off, the general contractor was indebted to the property owners.

### 3. Construction Claims— quantum meruit—summary judgment

Summary judgment was correctly granted for property owners on a quantum meruit claim by a subcontractor where the owners made monthly payments to the general contractor until the general contractor abandoned the project.

### 4. Construction Claims— oral guaranty—main purpose rule— issue of fact

There was a genuine issue of fact as to whether an oral guaranty was given to a subcontractor by the property owners and whether application of the main purpose rule was warranted in a construction case in which the general contractor had abandoned the project.

**5. Construction Claims— subcontractor against property owners—third-party beneficiary**

The trial court correctly granted summary judgment for property owners on a subcontractor's claim for damages as a third-party beneficiary. Even assuming that the property owners (the Hodgins) agreed to pay the general contractor an amount for the subcontractors, there was no new consideration to the property owners. Moreover, an arbitration proceeding resulted in an award in full settlement of all claims.

**6. Construction Claims— subcontractor against property owners—false representation**

Summary judgment was correctly granted for the property owners (the Hodgins) on a claim for false representation by a subcontractor seeking payment under an alleged guarantee by the property owners. The evidence indicates that the Hodgins paid the general contractor in a timely fashion and issued two party checks to resolve subcontractor's liens, as promised.

**7. Construction Claims— subcontractor against property owners—unfair trade practice**

Summary judgment was properly granted for property owners on an unfair and deceptive trade practice claim by a subcontractor. The claim was based on allegedly fraudulent conduct, but summary judgment was properly granted for the property owners on a fraud claim, and plaintiff did not show substantial aggravating circumstances in any breach of contract.

Appeal by plaintiff from order entered 14 June 2002 by Judge Wade Barber, Superior Court, Orange County. Heard in the Court of Appeals 19 August 2003.

*Stark Law Group, by Thomas H. Stark, for plaintiff.*

*Burns, Day & Presnell, P.A., by Daniel C. Higgins and Daniel T. Tower, for defendants James L. Hodgin and Nancy T. Hodgin.*

WYNN, Judge.

Under *Mace v. Bryant Construction Corporation*, 48 N.C. App. 297, 303, 269 S.E.2d 191, 194-95 (1980), this Court held, "because the subcontractor is entitled to a lien under G.S. 44A-23 only by way of subrogation, his lien rights are dependent upon the lien rights of the general contractor." In this case, because the general contractor did

not have any lien rights against the owner, the first-tier subcontractor, likewise, had no rights. However, we hold that the evidence creates an issue of fact as to whether the owners gave the subcontractor an oral guaranty, and if so, whether the "main purpose rule" should be applied in this case. Accordingly, we affirm in part and reverse in part the trial court's grant of summary judgment.

The underlying facts tend to show that the owners, James and Nancy T. Hodgins, contracted with Summit Companies, LLC[1] to serve as the general contractor in the construction of the Rockhaven Dialysis Center in Orange County, North Carolina. In September 1999, Summit hired Watson Electrical Construction Company to replace Port Beacon Electric, the original electrical subcontractor. On 1 December 1999, the Hodgins made their last payment to Summit; in return, Summit waived its lien rights for all labor and materials furnished through 30 November 1999.

In the meantime, after not receiving payment for work performed, Watson Electrical ceased work on the site on 30 November 1999. On 19 January 2000, Watson Electrical filed a Claim of Lien and Lien of Funds for $100,932.10 and initiated an action to perfect the lien on 21 January 2000.

In February 2000, the Hodgins declared Summit in default, terminated Summit as the general contractor on the project, and contracted with another general contractor to complete the project. On 1 March 2000, Summit filed a claim of lien on the project for $495,617.60, and thereafter, filed a complaint against the Hodgins on 8 August 2000. Pursuant to their contract, the parties submitted their disagreement to arbitration which resulted in (1) a determination that since the Hodgins owed Summit $294,000 and Summit owed the Hodgins $575,000, Summit should pay $281,000 to the Hodgins; (2) the dismissal of Summit's claim of lien with prejudice; and (3) a determination that the award was in full settlement of all claims and counterclaims submitted to arbitration. After the arbitration award in the Summit litigation, the trial court for the subject litigation entered summary judgment favoring the Hodgins. Watson Electrical appealed from the summary judgment.[2]

[1] Upon reviewing this appeal by Watson Electrical, we summarily reject its first argument that the trial court erred by granting summary

---

1. Defendant Summit Companies, L.L.C., is not a party to this appeal.

2. "Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

judgment on its claim for breach of contract because Watson Electrical neither claimed that it had a direct contract with the Hodgins nor produced evidence tending to show that the Hodgins ratified the contract between Summit and Watson. *See Simmons v. Morton*, 1 N.C. App. 308, 310, 161 S.E.2d 222, 223 (1968). Accordingly, we uphold the trial court's grant of summary judgment on Watson Electrical's breach of contract claim.

**[2]** Next, Watson Electrical argues that the trial court erred by granting summary judgment against its claims for enforcement of lien and a lien on funds. Regarding the claim for enforcement of lien, this Court has long recognized that a lien in favor of a subcontractor may arise either directly under G. S. 44A-18 and G.S. 44A-20 or by subrogation under G. S. 44A-23" *Con Co. v. Wilson Acres Apartments, Ltd.*, 56 N.C. App. 661, 664, 289 S.E.2d 633, 635 (1982). Under Chapter 44, Watson Electrical filed and served a Lien and Notice of Claim of Lien by First-Tier Subcontractor on the Hodgins' real property on 19 January 2000 and filed suit to perfect the lien on 31 January 2000. G. S. 44A-23 provides in pertinent part as follows:

> A first tier subcontractor, who gives notice as provided in this Article, may, to the extent of his claim, enforce the lien of the contractor created by Part 1 of Article 2 of this Chapter. . . . Upon the filing of the notice and claim of lien and the commencement of the action, no action of the contractor shall be effective to prejudice the rights of the subcontractor without his written consent.

"This statute grants to a first tier subcontractor a lien upon real property based upon a right of subrogation to the direct lien of the general contractor on the improved real property as provided in G. S. 44A-8. Because the subcontractor is entitled to a lien under G.S. 44A-23 only by way of subrogation, his lien rights are dependent upon the lien rights of the general contractor. Thus, if the general contractor has no

there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." *Martin Architectural Products v. Meridian Construction*, 155 N.C. App. 176, 180, 574 S.E.2d 189, 191 (2002). "An issue is material if the facts alleged would constitute a legal defense, or would affect the result of the action, or if its resolution would prevent the party against whom it is resolved from prevailing in the action." *Koontz v. Winston-Salem*, 280 N.C. 513, 518, 186 S.E.2d 897, 901 (1972). "An issue is genuine if it can be proven by substantial evidence." *Lowe v. Bradford*, 305 N.C. 366, 369, 289 S.E.2d 363, 366 (1982). "The movant has the burden of showing that summary judgment is appropriate. Furthermore, in considering summary judgment motions, we review the record in the light most favorable to the nonmovant." *Hayes v. Turner*, 98 N.C. App. 451, 456, 391 S.E.2d 513, 516 (1990).

right to a lien, the first tier subcontractor likewise has no such right." *Mace v. Bryant Construction Corp.*, 48 N.C. App. 297, 303, 269 S.E.2d 191, 194-95 (1980). The subcontractor is "bound by any defenses available against the contractor." *Con Co. v. Wilson Acres Apartments, Ltd.*, 56 N.C. App. 661, 664, 289 S.E.2d 633, 635 (1982). Moreover, "the subcontractor . . . [can] acquire no better right by subrogation than that of the principal. . . . They may assert only the lien rights which the general contractor has in the project. The general contractor can enforce the lien only for the amount due on the contract, and therefore, [the subcontractor is] similarly limited." *Vulcan Materials Co. v. Fowler Contracting Corp.*, 111 N.C. App. 919, 921-22, 433.S.E.2d 462, 464 (1993).

In this case, after Watson Electrical filed its action to enforce its claim of lien, Summit filed a claim of lien against the real property and sought enforcement of its lien. The Hodgins filed a demand for arbitration and asserted claims against Summit for breach of contract, breach of warranty, negligence and fraud. The arbitrator determined that the Hodgins owed Summit $294,000.00 for work performed and materials provided through 16 February 2000, and Summit owed the Hodgins $575,000.00 for corrected work and uncompleted work; accordingly, the arbitrator ordered Summit to pay the Hodgins the sum of $281,000.00. Thus, the arbitrator ultimately determined that Summit breached the contract, awarded the Hodgins damages, and dismissed Summit's claim of lien. Since the subcontractor is bound by any defenses available against the contractor, *see Con Co. v. Wilson Acres Apartments, Ltd.*, 56 N.C. App. 661, 664, 289 S.E.2d 633, 635 (1982), we uphold the trial court's grant of summary judgment in favor of the Hodgins on Watson Electrical's claim of lien on the real property.

However, a subcontractor's lien on funds does not arise by subrogation; rather, under G.S. 44A-18(1), "a lien in favor of [the subcontractor can] attach only to funds owed by owner to contractor." *Lewis-Brady Builders Supply, Inc. v. Bedros*, 32 N.C. App. 209, 231 S.E.2d 199, 200 (1977). In Mr. Hodgin's supplemental affidavit in support of his motion for summary judgment, he stated that the Hodgins had not paid Summit any money in connection with the project since 1 December 1999. Watson's last day on the project was 30 November 1999. Moreover, "the amount owed by owner to the contractor at any particular time must be determined in the light of the existing circumstances and the contract between owner and contractor." *Id.* at 212, 231 S.E.2d at 201. Due to Summit's breach, the Hodgins were

"entitled to set off any amount [they] may have owed [Summit] against the damages caused by [Summit's] breach of contract. Only after these developments could it be determined what amount, if any, [the Hodgins] owed [Summit]." *Id.* As stated, the arbitrator determined that after the set-off, Summit was indebted to the Hodgins. Accordingly, the trial court properly granted summary judgment in favor of the Hodgins on Watson Electrical's lien on funds.

[3] In Watson Electrical's fourth cause of action, it seeks to recover damages from the Hodgins under the theory of *quantum meruit.* "*Quantum meruit* is a measure of recovery for the reasonable value of services rendered in order to prevent unjust enrichment. It operates as an equitable remedy based upon a quasi contract or a contract implied in law. . . . An implied contract is not based on an actual agreement, and *quantum meruit* is not an appropriate remedy when there is an actual agreement between the parties. Only in the absence of an express agreement of the parties will courts impose a quasi contract or a contract implied in law in order to prevent an unjust enrichment." *Paul L. Whitfield, P.A. v. Gilchrist,* 348 N.C. 39, 42, 497 S.E.2d 412, 414-15 (1998). "Unjust enrichment has been described as:

the result or effect of a failure to make restitution of, or for, property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor. It is a general principle underlying various legal doctrines and remedies, that *one person should not be permitted unjustly to enrich himself [or herself] at the expense of another.*

Furthermore, the mere fact that one party was enriched, even at the expense of the other, does not bring the doctrine of unjust enrichment into play. There must be some added ingredients to invoke the unjust enrichment doctrine." *Peace River Electric Cooperative, Inc. v. Ward Transformer Company, Inc.,* 116 N.C. App. 493, 509, 449 S.E.2d 202, 213 (1994); *see also Collins v. Davis,* 68 N.C. App. 588, 591, 315 S.E.2d 759, 761 (1984) (stating recovery under *quantum meruit* based upon contract implied-in-law is only proper in circumstances such that it would be "unfair" for the recipient to retain the benefit of the claimant's services).

In this case, the Hodgins contracted with Summit for the construction of a dialysis center for $1,000,000. Until Summit abandoned the project, the Hodgins paid Summit in monthly progress payments. Even though the Hodgins were "enriched" by the work performed by Watson Electrical, based upon these facts, a genuine issue

WATSON ELEC. CONSTR. CO. v. SUMMIT COS.

[160 N.C. App. 647 (2003)]

of material fact does not exist as to whether any such enrichment was unjust because the Hodgins made regular payments to Summit. Accordingly, we uphold the trial court's grant of summary judgment on this claim.

**[4]** In its fifth cause of action, Watson Electrical alleges the Hodgins, as guarantors of payment, are liable to Watson Electrical for sums due under the contract and their failure to pay constitutes a breach of the guaranty of payment. In the Hodgins' forecast of evidence in support of summary judgment, Mr. Hodgin denies agreeing to guarantee payment in his affidavit. However, in opposition to defendants' motion for summary judgment, Watson Electrical presented the deposition testimony of Dennis Cole, Watson Electrical's field supervisor, and Keith Clifford, a Watson Electrical project manager. Mr. Cole and Mr. Clifford stated that during their work site visit on 21 September 1999, they had a conversation with Mr. Hodgin in which Mr. Hodgin assured them Watson Electrical would be paid and that Mr. Hodgin would issue a two-party check if necessary. Ikey Huffman, Watson's Burlington Division Manager, stated that Mr. Cole and Mr. Clifford relayed that assurance to him upon their return from the work site. However, Watson Electrical neither obtained nor received a signed writing from the Hodgins guaranteeing payment.

A suretyship promise must be in writing. Under the North Carolina Statute of Frauds,

> No action shall be brought . . . to charge any defendant upon a special promise to answer the debt, default or miscarriage of another person, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party charged therewith or some other person thereunto by him lawfully authorized.

N.C. Gen. Stat. § 22-1 (2001). Thus, pursuant to the Statute of Frauds, enforcement of the alleged oral guaranty would be barred. Nevertheless, Watson Electrical contends the oral guaranty is enforceable pursuant to the main purpose rule. North Carolina has "long recognized the rule that the promise to pay the debt of another is outside the statute and enforceable if the promise is supported by an independent and sufficient consideration running to the promisor. This rule is generally referred to as the 'main purpose rule' or the 'leading object rule.'" *McKenzie Supply Company v. Motel Development Unit 2, Inc.*, 32 N.C. App. 199, 202-03, 231 S.E.2d 201, 204 (1977); *see also Burlington Industries, Inc. v. Foil*, 284 N.C. 740,

202 S.E.2d 591 (1974) ("Generally, if it is concluded that the promisor had the requisite personal, immediate, and pecuniary interest in the transaction in which a third party is the primary obligor, then the promise is said to be original rather than collateral and therefore need not be in writing to be binding.").

Watson Electrical contends there is a genuine issue of material fact as to (1) whether the oral guaranty was given and (2) whether the main purpose rule is applicable. Watson Electrical contends that the Rockhaven project was behind schedule and over budget, the relationship between the owners and the general contractor was deteriorating and the Hodgins wanted the project completed without delay. According to Watson Electrical, the prospect of having another electrical contractor walk off the job invoked images of further delays and increased costs that induced Mr. Hodgin to make assurances to Watson Electrical that regardless of the circumstances, Watson Electrical would be paid. However, the Hodgins contend that they did not have "a personal, immediate, and pecuniary interest in seeing that Summit hired Watson to do the electrical work" because they had a fixed price contract with Summit to construct the project for an amount not to exceed $1,000,000. Nonetheless, in Mr. Hodgin's deposition, he stated he had concerns about Summit's ability to finish the project and that the delays, additional interest cost and the loss of income was "killing" him. Mr. Hodgin further stated that he had several conversations with Summit about finishing the building because "you know, . . . we had hundreds of thousands of dollars invested in this thing, plus the interest on our loans. And, yes, there was a lot of conversation with Adams, not particularly to the electrical, but the project total." He was under pressure to get the project done.

"Whether a promise is an original one not coming within the statute of frauds, or a collateral one required by the statute to be in writing, is to be determined from the circumstances of its making, the situation of the parties, and the objects to be accomplished. Where the intent is doubtful, the solution usually lies in summoning the aid of a jury. . . . However, [if] there is insufficient evidence as a matter of law to bring the main purpose rule into play, the case should not be allowed to go to the jury under the theory of the main purpose rule." *Burlington Industries*, 284 N.C. 740, 752, 202 S.E.2d 591, 599 (1974). After carefully reviewing the pleadings, affidavits, and depositions, we find a genuine issue of material fact exists as to (1) whether an oral guaranty was given, and (2) whether an application of the main purpose rule is warranted on the facts of this case. Accordingly, we

find summary judgment was improvidently granted on Watson Electrical's claim for breach of guaranty.

[5] In its sixth cause of action, Watson Electrical contends it should recover damages because it was a third-party beneficiary to an alleged February 2000 contract entered into between the Hodgins and Summit for $250,000. "To establish a claim based on the third party beneficiary contract doctrine, a complaint's allegations must show: (1) the existence of a contract between two other persons; (2) that the contract was valid and enforceable; and (3) that the contract was entered into for his direct, and not incidental, benefit." *LSB Financial Services, Inc. v. Harrison*, 144 N.C. App. 542, 548, 548 S.E.2d 574, 578 (2001). Watson Electrical relies on deposition testimony from Mr. Hodgin and Thomas Adams, owner of Summit Corporation, which he contends demonstrates a genuine issue of material fact as to the existence of a February 2000 contract for the benefit of the subcontractors. From the evidence presented by both parties, it is clear that an agreement was never reached between the parties regarding a $250,000 payment. According to Mr. Hodgin, between 30 November 1999 and 16 February 2000, the date Summit was terminated from the project, there were discussions between Summit and the Hodgins regarding change orders and several lien claimants. Mr. Hodgin stated that Summit threatened to abandon the job if it was not paid $250,000 within several days. Mr. Hodgin never agreed to pay $250,000. However, Mr. Adams stated an agreement was reached where the Hodgins agreed to pay an additional $250,000, that based upon this agreement, he called several subcontractors and told them they would receive payment in a few days and that after notifying the subcontractors, Mr. Hodgin repudiated the deal. Nonetheless, these facts do not create a genuine issue of material fact as to whether an enforceable contract was entered into by the parties.

"An enforceable contract is one supported by consideration. Moreover, where a contract has been partially performed, as is the case here, a modification of its terms is treated as any other contract and must also be supported by consideration. It is well established that consideration sufficient to support a contract or a modification of its terms consists of any benefit, right, or interest bestowed upon the promisor, or any forbearance, detriment, or loss undertaken by the promisee. Consideration is the glue that binds parties together, and a mere promise, without more, is unenforceable." *Lee v. Paragon Group Contractors, Inc.*, 78 N.C. App. 334, 337, 337 S.E.2d 132, 134 (1985).

In this case, even assuming the Hodgins agreed to pay Summit $250,000 in order to pay various subcontractors, no new consideration flowed to the Hodgins. Under the original contract between Summit and the Hodgins, Summit agreed to construct the dialysis center for the fixed price of $1,000,000. Any additional money above the $1,000,000 would constitute a contractual modification requiring new consideration. Moreover, the record shows that all claims, including the alleged $250,000 contract, were determined in the arbitration proceeding. Under that proceeding, the arbitrator held that the award was in "full settlement of all claims and counterclaims submitted." Accordingly, we hold the trial court properly granted summary judgment on this claim.

[6] In its seventh cause of action, Watson Electrical contends it reasonably relied to its detriment upon Mr. Hodgin's allegedly false representation that he would guarantee payment to Watson Electrical and, therefore, the Hodgins should pay damages in the amount of $100,932.10 plus interest.

"To make out a case of actionable fraud, plaintiffs must show: (a) that defendant made a representation relating to some material past or existing fact; (b) that the representation was false; (c) that defendant knew the representation was false when it was made or made it recklessly without any knowledge of its truth and as a positive assertion; (d) that defendant made the false representation with the intention that it should be relied upon by plaintiff; (e) that plaintiffs reasonably relied upon the representation and acted upon it; and (f) that plaintiffs suffered injury." *Johnson v. Phoenix Mutual Life Insurance Company*, 300 N.C. 247, 253, 266 S.E.2d 610, 615 (1980), *overruled on other grounds by Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 374 S.E.2d 385 (1988), *Boyd v. Drum*, 129 N.C. App. 586, 501 S.E.2d 91 (1998), and *Symons Corp. v. Insurance Co. of North America*, 94 N.C. App. 541, 380 S.E.2d 550 (1989).

The facts, viewed in the light most favorable to Watson Electrical, indicate that Watson Electrical's representatives and Mr. Hodgin had a conversation in the parking lot after Watson Electrical's work site visit. During this conversation, Mr. Hodgin allegedly stated Watson Electrical would be paid for their services and he would issue a two-party check if necessary. After nonpayment, Watson Electrical contacted Mr. Hodgin and Mr. Hodgin informed them there was money remaining on the contract. The facts also indicate Mr. Hodgin issued several two-party checks to subcontractors in order to resolve claims

of lien and that he paid Summit in a timely fashion which tends to negate any allegation that Mr. Hodgin made a false statement regarding the issuance of two party checks. Accordingly, on these facts, a genuine issue of material fact does not exist regarding whether Mr. Hodgin made a false statement or misrepresentation about guaranteeing payment.

[7] In its final cause of action, Watson Electrical contends it is entitled to treble damages because Mr. Hodgin's conduct was unfair and/or deceptive within the meaning of Chapter 75 of the North Carolina General Statutes. In its brief, Watson Electrical indicates Mr. Hodgin's allegedly fraudulent conduct is the conduct upon which this cause of action is based. As stated, summary judgment was properly granted on Watson Electrical's fraud claim and therefore, summary judgment was properly granted on Watson Electrical's unfair and deceptive trade practices cause of action. Furthermore, "it is well recognized . . . that actions for unfair or deceptive trade practices are distinct from actions for breach of contract, and that a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75-1.1" *Eastover Ridge, L.L.C. v. Metric Constructors, Inc.*, 139 N.C. App. 360, 367-68, 533 S.E.2d 827, 832-33 (2000). Thus, "plaintiff must show substantial aggravating circumstances attending the breach to recover under the Act." *Id.* Watson Electrical has not met this showing in this case; accordingly, summary judgment was properly granted on this issue.

In summation, we hold summary judgment was properly granted on all causes of action with the exception of the breach of oral guaranty claim. Accordingly the order below is,

Affirmed in part, reversed in part.

Judges HUDSON and CALABRIA concur.