MURPHY, Judge.
 

 *83
 
 Thomas Rider ("Thomas") and Linda Rider ("Linda") (collectively "the Riders") appeal from the trial court's decision granting Edwin Hodges d/b/a Hodges Lawn and Landscape's ("Hodges") motion for summary judgment as to the Riders' causes of action for: (1) breach of contract; (2) fraudulent billing; and (3) violation of the Unfair and Deceptive Trade Practices Act ("UDTPA"). The Riders argue that the trial court erred in granting the motion for summary judgment because genuine issues of material fact exist as to whether: (1) Hodges breached a valid contract; (2) Hodges committed fraudulent billing; and (3) Hodges engaged in unfair and deceptive trade practices. After careful review, we affirm the trial court's grant of Hodges' motion for summary judgment.
 

 Background
 

 In early July 2011, the Riders moved to the Oleta Falls area of Hendersonville, North Carolina. At some point prior to their move,
 
 [1]
 
 the parties arranged for Hodges to landscape the Riders' property.
 
 [2]
 
 The Riders paid Hodges $24,000 upfront "[t]o do landscaping," in two separate payments-$4,000 on 3 February 2011, and $20,000 on 4 March 2011. In June of 2012, Hodges felt that his landscaping services were
 
 *84
 
 completed and he ceased working on the Riders' property. Thomas claims that there were numerous issues with the landscaping. However, the Riders never complained about Hodges' work until 2015 when they filed this lawsuit.
 

 Thomas contends that the Riders consistently asked Hodges for receipts or other documentation of his work expenditures throughout the landscaping process. However, the only documented request for Hodges' receipts occurred by email on 13 October 2013. Two or three days after this request, Hodges provided the Riders with an invoice ("the Invoice"). This was at least two years after the Riders claim the parties first entered into an arrangement. Both parties agree that the Invoice was created for use in the Riders' lawsuit against First Citizens Bank.
 

 Despite Thomas' contention, Hodges claimed that the Riders first asked him to provide receipts for his work in 2013, and in total the Riders only asked for receipts "two, maybe three [times] including the [13 October 2013] email." Hodges further claimed that he offered receipts each time the Riders wrote him a check, and again when he completed all of his work in 2012, but the Riders declined.
 

 After the Riders filed this suit, both Thomas and Hodges were deposed on 23 June 2016 regarding their business dealings and the landscaping arrangement. In Thomas' deposition, he testified that Hodges agreed the cost of the landscaping "would be up to [$24,000.]" In the same deposition, Thomas agreed that "there was never any firm agreement with regard to price." However, in his 27 October 2016 affidavit, filed in opposition to Hodges' motion for summary judgment, Thomas claims that Hodges "agreed to perform the specified landscaping work for [$24,000]."
 

 In contrast to Thomas' testimony, Hodges claimed in his deposition that he told the Riders it would cost between $26,000 and $28,000 to landscape their property. Hodges went on to explain that the Riders paid him $24,000 because that was what they could afford for landscaping, and that "[i]t was understood that we would landscape everything we could with all the plants we could until [the Riders] ran out of money."
 

 In addition to Thomas' inconsistent sworn testimony regarding price, the depositions
 
 *246
 
 also demonstrate that the parties never reached an agreement as to the scope of the work Hodges was to complete. In his deposition, Thomas claimed that he and Hodges spoke about the landscaping including: a flagpole, irrigation, re-grading part of a hill on the property, fencing, and plants. Thomas went on to admit that there was no "specific agreement," as to plans for irrigation, how much fencing
 
 *85
 
 would be built, how many or what type of plants would be provided, or how much mulch and top soil would be used. Thomas also admitted, "there was never a meeting of the minds," and that he and Hodges had "no specific agreement about anything."
 

 The trial court entered an order granting summary judgment in Hodges' favor. The Riders filed a timely notice of appeal.
 

 Analysis
 

 The Riders argue on appeal that the trial court erred in granting Hodges' motion for summary judgment. We disagree and affirm the trial court's decision.
 

 We review an order granting summary judgment de novo.
 
 Forbis v. Neal
 
 ,
 
 361 N.C. 519
 
 , 524,
 
 649 S.E.2d 382
 
 , 385 (2007) (citation omitted). Summary judgment is only appropriate when the record shows "there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law."
 
 Id
 
 . at 524,
 
 649 S.E.2d at 385
 
 (quotation omitted).
 

 I. Breach of Contract
 

 The Riders argue the trial court erred in granting summary judgment on their claim for breach of contract because Hodges did not perform all of the landscaping work for which the parties contracted. We disagree. No contract ever formed because the arrangement was not certain and definite as to the price or scope of the work to be completed, and no meeting of the minds occurred.
 

 "A contract for service must be certain and definite as to the nature and
 
 extent of the service to be performed
 
 , the place where and the person to whom it is to be rendered, and
 
 the compensation to be paid
 
 , or it will not be enforced."
 
 Croom v. Goldsboro Lumber Co.
 
 ,
 
 182 N.C. 217
 
 , 220,
 
 108 S.E. 735
 
 , 737 (1921) (emphasis added). With regard to these essential terms "the parties must assent to the same thing in the same sense.... If any portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement."
 
 Boyce v. McMahan
 
 ,
 
 285 N.C. 730
 
 , 734,
 
 208 S.E.2d 692
 
 , 695 (1974) (internal quotation omitted). Similarly, "a valid contract exists only where there has been a meeting of the [parties'] minds as to all essential terms of the agreement."
 
 Northington v. Michelotti,
 

 121 N.C. App. 180
 
 , 184,
 
 464 S.E.2d 711
 
 , 714 (1995) (citation omitted).
 

 The Riders' breach of contract argument fails for two reasons. First, while both parties acknowledge a landscaping arrangement existed,
 
 *86
 
 there was never a meeting of the minds as to the scope of the work to be done.
 
 See
 

 Croom
 
 ,
 
 182 N.C. at 220
 
 ,
 
 108 S.E. at 737
 
 (explaining that the extent of the services to be performed is an essential element of an enforceable contract for services). Here, Thomas' own testimony demonstrates the parties never specified the breadth of the work Hodges was to complete.
 

 In his deposition, Thomas claims that after the Riders retained Hodges and paid him in full, Hodges "didn't agree to specifically do anything, just to get started on the landscape." Although certain topics such as irrigation were discussed, Thomas affirms that there was never a definitive meeting of the minds as to "any specific terms of the contract with regard to what work or materials [would] be performed [by Hodges.]" As a result, no meeting of the minds occurred regarding the extent of the services to be performed, which is essential for an enforceable contract for services to form.
 

 Second, the Riders' claim that Hodges breached a contract also fails because the parties never reached a meeting of the minds with regard to the compensation Hodges was to be paid for his landscaping services. Compensation is an essential element to a contract for services.
 
 Croom
 
 ,
 
 182 N.C. at 220
 
 ,
 
 108 S.E. at 738
 
 . Here, there was no agreement as to price, and therefore there was no enforceable contract.
 

 *247
 
 Thomas admits at numerous times that there was never a meeting of the minds with regard to price:
 

 Q. Now, what was your understanding or expectation as to what Mr. Hodges['] overhead profit would be on this job?
 

 [Thomas]: I had no idea what his overhead profit would be on the job. I-in that same conversation I asked him, you know, I understand that you have to pick up the plants, and, you know, there's certain expenses involved in that, deliver them to the site. I don't have a problem with paying for any of that and your profit on doing those functions. But I'm going to need to know the price for a plant, what that overhead is including your pickup, delivery, profit, whatever is added into that and what the cost for planting is. Those were the three factors that I considered would go into supplying a landscape service.
 

 Q. Sounds like there was never any firm agreement with regard to price?
 

 ...
 

 *87
 
 Q. Is that accurate?
 

 [Thomas]: Well, there never was because none was ever put forth. I mean, it's hard for me to make a pronouncement on the price of a plant when I don't know what a plant costs.
 

 Q. So I think you and Mr. Hodges never had agreement with regard to what the price of this landscaping work was going to be, is that accurate?
 

 ...
 

 [Thomas]: We-not a precise price, no.
 

 While it is clear the Riders paid Hodges about $24,000 "[t]o do landscaping," Thomas also made clear that the parties were not sure how much they would ultimately pay Hodges:
 

 Q. ... Do you recall why you paid him a specific amount of $24,000 as opposed to 26 or 29 or 20?
 

 [Thomas]: Because he said it would be
 
 up to that
 
 to do the landscaping on the property.
 

 (Emphasis added).
 

 The only time that the Riders claimed a definite price existed was Thomas' 27 October 2016 affidavit filed in opposition to Hodges' motion for summary judgment. In the affidavit, he claims Hodges "agreed to perform the specified landscaping work for $24,000.00[,]" contradicting his prior deposition. Although this affidavit alleges a price was agreed to, it does not create a genuine issue of material fact.
 

 Even where the defendant's latest account of the underlying fact situation might, in other circumstances, be enough to defeat summary judgment "a nonmovant may not generate a conflict simply by filing an affidavit contradicting his own sworn testimony where the only issue raised is credibility[,]" and that "once [the movant] support[s] its summary judgment motion with the [nonmovant's] sworn testimony, [the nonmovant] can only defeat summary judgment on the issue of his intentional acts by producing evidence
 
 other than his own affidavit or deposition contradicting his own testimony
 
 ."
 
 Allstate Ins. Co. v. Lahoud
 
 ,
 
 167 N.C. App. 205
 
 , 211-12,
 
 605 S.E.2d 180
 
 , 185 (2004).
 
 [3]
 
 If not
 
 *88
 
 for this rule, "a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony[,]" which would "greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."
 
 Wachovia Mortg. Co. v. Autry-Barker-Spurrier Real Estate, Inc.
 
 ,
 
 39 N.C. App. 1
 
 , 9-10,
 
 249 S.E.2d 727
 
 , 732 (1978),
 
 aff'd per curiam by an equally divided court
 
 ,
 
 297 N.C. 696
 
 ,
 
 256 S.E.2d 688
 
 (1979) (citation omitted). Thus, as here, where a nonmovant relies solely on his own affidavit
 
 [4]
 
 that contradicts his prior deposition testimony to create a genuine issue of
 
 *248
 
 material fact, we decline to allow the affidavit to create a genuine issue that would otherwise defeat summary judgment.
 

 Since Thomas' 27 October 2016 affidavit contradicts his sworn deposition testimony and was filed in response to a motion for summary judgment, we decline to consider it and hold that the parties never agreed upon price-an essential element of a contract. No contract existed for Hodges to breach and Hodges was entitled to judgment as a matter of law on the Riders' breach of contract claim.
 

 II. Fraud
 

 The Riders argue the trial court erred in granting Hodges' motion for summary judgment on their fraud claim, arguing the material facts were in dispute as to whether they were induced to pay Hodges $24,000: (1) by the Invoice; and (2) by alleged fraudulent promises. We disagree and affirm the trial court's grant of summary judgment in favor of Hodges for this claim.
 

 For the Riders' fraud claim to survive summary judgment, Hodges' conduct must satisfy all the elements of fraud: "(1) a false representation or concealment of a material fact; (2) reasonably calculated to deceive; (3) made with the intent to deceive; (4) which does in fact deceive; (5) resulting in damage to the injured party."
 
 Forbis
 
 ,
 
 361 N.C. at 526-27
 
 ,
 
 649 S.E.2d at 388
 
 (quotation omitted). "[A]ny reliance on the allegedly false representations must be reasonable."
 
 Id
 
 . at 527,
 
 649 S.E.2d at 388
 
 (citation omitted).
 

 *89
 
 Under Rule 9(b) of the North Carolina Rules of Civil Procedure, "[i]n all averments of fraud, duress or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Specifically, the particularity requirement for a fraud claim "is met by alleging time, place and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent acts or representations."
 
 Terry v. Terry
 
 ,
 
 302 N.C. 77
 
 , 85,
 
 273 S.E.2d 674
 
 , 678 (1981). The Riders have failed to allege a proper fraud claim under North Carolina law with regard to both the Invoice and alleged promises for the reasons that follow.
 

 A. Invoice
 

 The Riders argue that the Invoice defrauded them because it contained intentionally inaccurate records of the labor and materials used on the property. We disagree, because the Invoice did not actually deceive the Riders, nor did they rely on it or face injury thereby.
 
 See
 

 Forbis
 
 ,
 
 361 N.C. at 526-27
 
 ,
 
 649 S.E.2d at 388
 
 (stating that the elements of a proper fraud claim include actual deception of the intended party and damage to the deceived party). Thomas testified that he immediately recognized the information on the Invoice was incorrect, and that the Invoice was created more than two years after the Riders paid Hodges. No later payments were made based upon the Invoice. Further, both parties agree the Invoice was generated for the Riders' use in another lawsuit, not for the purpose of billing the Riders for landscaping services.
 

 These facts indicate that Hodges' conduct does not satisfy the fourth or fifth elements of a proper fraud claim-that it actually deceived the intended party and caused them damage. The Riders cannot claim they were deceived by the Invoice if Thomas recognized it was false upon receiving it. Finally, since the Riders were not induced to pay Hodges more than the $24,000 they had already given him, they cannot now claim that they were damaged by the Invoice's alleged inaccuracies. The Riders have not alleged facts that satisfy a fraud claim as it relates to the Invoice. Thus, summary judgment was proper as to this aspect of the Riders' fraud claim.
 

 B. Alleged Promises
 

 The Riders argue Hodges made promises that he never intended to fulfill to induce the Riders to pay him $24,000. The Riders' allegations of fraudulent promises fail as a matter of law.
 

 The Riders claim Hodges induced them to enter into a contract by making fraudulent promises, stating in their complaint that Hodges "had
 
 *90
 
 no intention to satisfy his obligations,"
 
 *249
 
 and the Riders "did actually rely on [Hodges'] misrepresentation[s.]" The Riders do not detail any content of the allegedly fraudulent promises and have not met their pleading requirements under North Carolina Rule of Civil Procedure 9(b).
 
 See
 

 Terry
 
 ,
 
 302 N.C. at 85
 
 ,
 
 273 S.E.2d at 678
 
 (specifying that all fraud claims must be pleaded with particularity). Therefore, summary judgment was proper as to this aspect of the Riders' fraud claim.
 

 Since the Riders failed to allege a proper fraud claim regarding either the Invoice or alleged fraudulent promises, the trial court did not err in granting summary judgment for Hodges as to this issue.
 

 III. Unfair and Deceptive Trade Practices
 

 The Riders argue they were injured by Hodges' use of unfair and deceptive trade practices in violation of N.C.G.S § 75-1.1(a) (2015). They claim Hodges violated the UDTPA by: (1) inducing them into a contract he intended to breach; and (2) fraudulently billing them with an inaccurate invoice.
 
 [5]
 
 We disagree and affirm the trial court's granting of summary judgment in favor of Hodges.
 

 "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce" are unlawful. N.C.G.S. § 75-1.1(a). For a plaintiff to establish a prima facie claim of unfair and deceptive trade practices that will survive summary judgment, he "must show: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, (3) which proximately caused injury to plaintiffs."
 
 Walker v. Fleetwood Homes O f N. Carolina, Inc.
 
 ,
 
 362 N.C. 63
 
 , 71-72,
 
 653 S.E.2d 393
 
 , 399 (2007) (quotation and citation omitted). Whether an act violates N.C.G.S. § 75-1.1 is a question of law.
 
 Id
 
 . at 71,
 
 653 S.E.2d at 399
 
 (quotation omitted).
 

 A. Intentional Breach of the Contract
 

 The Riders first argue that summary judgment should not have been granted on the UDTPA claim because "Hodges fraudulently induced [them] into entering into the contract even though Hodges had no intention of honoring the contract." Breach of contract, even if intentional,
 
 *91
 
 can only create a basis for an unfair and deceptive trade practices claim if substantial aggravating circumstances attend the breach.
 
 Watson Elec. Constr. Co. v. Summit Cos., LLC
 
 ,
 
 160 N.C. App. 647
 
 , 657,
 
 587 S.E.2d 87
 
 , 95 (2003). Here, the Riders claim the aggravating circumstance is "Hodges' conduct in soliciting funds for labor and materials[,] which were never going to be provided[.]"
 

 We decline to review whether Hodges' conduct qualifies as an aggravating circumstance attending a breach of contract because, as discussed in Section I, there was no contract for Hodges to breach because the agreement between Hodges and the Riders was not certain and definite as to the price or scope of the work to be completed, and no meeting of the minds occurred. Thus, as a matter of law, the act the Riders allege constituted an unfair or deceptive act or practice never occurred, as required to establish a prima facie claim for unfair and deceptive trade practices.
 
 See e.g.
 

 Watson Elec. Constr. Co.
 
 ,
 
 160 N.C. App. at 657
 
 ,
 
 587 S.E.2d at 95
 
 (considering whether aggravating circumstances attended a breach of contract only after determining that a breach of contract occurred).
 

 B. Fraudulent Billing
 

 The Riders argue that if there was no contract, summary judgment still should not have been granted on the UDTPA claim because a finder of fact could find a violation of UDTPA based on the Riders' fraudulent billing claim. The complaint describes this cause of action as:
 

 *250
 
 26. The foregoing and succeeding paragraphs are hereby incorporated by reference and realleged as if fully set forth herein.
 

 27. The actions of the Defendant in providing landscaping services and entering into landscaping contracts are in or affecting commerce.
 

 28. The Defendant procured the Contract with the Plaintiffs, demanded payment from the Plaintiffs, accepted the Plaintiffs' money, and submitted the fraudulent Invoice to the Plaintiffs with the intent to defraud the Plaintiffs, said actions constituting unfair and deceptive trade practices in violation of [N.C.G.S.] § 75-1.1 et seq.
 

 29. The Defendant fraudulently represented to the Plaintiffs he would perform the services under the Contract and fraudulently represented to the Plaintiffs he had provided the labor and materials specified in the Invoice.
 

 *92
 
 30. The Plaintiffs ... were actually damaged thereby.
 

 Based on this complaint, a prima facie case of unfair and deceptive trade practices beyond the breach of contract claim does not exist because the alleged acts did not proximately cause injury to the Riders.
 

 To the extent the UDTPA claim is based on the Invoice, the submission thereof or representation that the labor and materials therein were provided caused no proximate injury to the Riders because the Invoice was not generated for over two years after the Riders submitted the last payment for landscaping, and it was indisputably created for the Riders to use in a different lawsuit. The Riders argue on appeal that a UDTPA claim can also be based on "false representations" made "to induce the payment of $24,000[ ]" or fraudulently billing against entrusted funds. However, these arguments were not addressed by the complaint and are made for the first time on appeal, and thus are not appropriate for us to now review. N.C. R. App. P. 10 ("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context.")
 

 Neither of the Riders' allegations on the issue of unfair and deceptive trade practices sufficiently supports their claim that Hodges violated N.C.G.S § 75-1.1(a). The trial court did not err in granting summary judgment on this issue.
 

 Conclusion
 

 For the reasons stated above, we affirm the trial court's order granting summary judgment for Hodges on the claims for breach of contract, fraudulent billing, and unfair and deceptive trade practices.
 

 AFFIRMED.
 

 Judges HUNTER, JR. and DAVIS concur.
 

 [1]
 

 Neither party was able to recall a specific date, but both parties agree it was between late 2010 and early 2011.
 

 [2]
 

 Hodges is independently contracted by the Oleta Falls Property Owners' Association ("Oleta Falls POA") to upkeep the common areas of the community. He has also completed private landscaping jobs for thirty-three Oleta Falls residents.
 

 [3]
 

 Allstate
 
 examined and clarified
 
 Wachovia Mortgage Co. v. Autry-Barker-Spurrier Real Estate, Inc.,
 

 39 N.C. App. 1
 
 ,
 
 249 S.E.2d 727
 
 (1978),
 
 aff'd per curiam by an equally divided court
 
 ,
 
 297 N.C. 696
 
 ,
 
 256 S.E.2d 688
 
 (1979), where we held that a party cannot defeat a motion for summary judgment by creating an issue of fact by filing an affidavit in response to the motion that contradicts his prior sworn testimony.
 
 Id.
 
 at 9,
 
 249 S.E.2d at 732
 
 .
 

 [4]
 

 Only Thomas submitted an affidavit in opposition to Hodges' motion for summary judgment. At no point did Linda verify the complaint, submit her own affidavit, or otherwise offer sworn testimony.
 

 [5]
 

 We consider no other potential arguments for the claim that Hodges' conduct violated the UDTPA because the Riders did not raise any. It is an appellant's responsibility to raise all relevant issues and arguments that they wish to be considered. Under North Carolina Rule of Appellate Procedure 28(6)(b), "[i]ssues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned." Thus we decline to examine Hodges' business dealings with the Riders for unfair or deceptive trade practices beyond these two arguments.