JAMES O. BRAWLEY, JR. v. WILDA T. BRAWLEY, CEDAR CREST, INC., AND CONDOMINIUM BUILDERS, INC.

No. 8721SC25

(Filed 17 November 1987)

Contracts § 27.1— sufficiency of evidence of contract—consideration—exhibit missing from contract—no failure of agreement

Appellee presented sufficient evidence of a valid and enforceable contract between the parties for the development of land to entitle it to summary judgment where the essential terms of consideration, development of the property in exchange for monetary compensation, and mutual assent evidenced by the reading and signing of the agreement by all the parties after substantial negotiation were apparent from the face of the agreement and created no triable issue; furthermore, appellant could not successfully advance as a defense that the contract failed because "Exhibit A," setting forth the method of determining costs, had since been lost because appellant assented to the terms of the agreement which stated that Exhibit A was attached thereto.

APPEAL by defendant Wilda T. Brawley from *DeRamus, Judge.* Judgment entered 17 October 1986 in Superior Court, FORSYTH County. Heard in the Court of Appeals 25 August 1987.

James O. Brawley, Jr. instituted a declaratory judgment action by filing a complaint on 25 September 1984 to determine his respective rights concerning approximately 32 acres of land inherited by plaintiff's wife (now his ex-wife) from her parents on 10 December 1963. Plaintiff also sought a determination as to his rights and responsibilities under, as well as an interpretation of, a written agreement entered into by and between himself and Wilda T. Brawley and Condominium Builders, Inc. (hereinafter referred to as CBI) on 10 March 1981.

On 10 March 1981, the plaintiff together with his wife and CBI reduced the aforementioned agreement to writing. The writing essentially provided that CBI would use its expertise and all available resources to construct and develop condominium units upon the Brawley property. CBI is the holder of an unlimited contractor's license in North Carolina, and is engaged in the business of developing condominiums and other multi-family residential projects.

The agreement specifically provided in pertinent part: (a) that the Brawleys and CBI would form a new corporation to be

known as Cedar Crest, Inc.; that such corporation would be formed for tax purposes to carry out the property development; (b) that the Brawleys would convey the property to Cedar Crest, Inc., in two fifteen-acre sections and in turn Cedar Crest would transfer 25% of its stock to Mr. Brawley and 25% to Mrs. Brawley as partial payment; (c) that as each deed was executed by the Brawleys and delivered to Cedar Crest, Inc., it would execute and deliver to the Brawleys a deed of trust on the property so described in the deed; (d) that as each condominium unit would be sold by Cedar Crest, Inc., CBI would be paid its costs as calculated pursuant to CBI's accounting system in use in 1981, which was allegedly shown and explained to the Brawleys at the time the agreement was reached; (e) that when all of the units in a particular phase would be sold and the legal title to that phase would be transferred by CBI to the Homeowner's Association or other designated entity, the profit would be divided and distributed 50% to the Brawleys and 50% to CBI; and (f) that the agreement would continue and remain in effect for five years from the date of execution as to any portion to be developed for residential purposes and for seven years from the date of execution as to any portion to be developed for non-residential use.

The parties, Mr. Brawley and Mrs. Brawley, both signed the agreement and then delivered it to CBI for further execution by its president, Ralph A. Kiger. All of the parties, including Mrs. Brawley, signed the agreement which stated that Exhibit A, which allegedly contained an illustration of the specific method for determining costs, was attached to it.

Project progression was halted at the outset because the property had to be rezoned to accommodate multi-family dwelling units, but after a considerable amount of effort was expended by both the Brawleys, the rezoning was approved. Subsequent to rezoning approval, the Brawleys along with Ralph Kiger went out to dinner to celebrate and Mrs. Brawley was quoted in the 11 July 1982 edition of the Winston-Salem Journal as saying that she was "happy about it" and pleased that the project could begin now that the rezoning was complete. The edition also states that Mrs. Brawley said she and her husband rejected several plans for the land until they found one that was right.

After execution of the 1981 agreement, Cedar Crest employed the following companies and persons to work on the proj-

ect: (1) Joyce Engineering, surveying; (2) Burrow and Lineback Company, mapping and rezoning; (3) Roy H. Park, landscape architect; and (4) John P. Cone, architect. These employees were paid by Cedar Crest, Inc. For a time, the Brawleys and CBI split the expenses for the employees named above, but defendant CBI alleges that the Brawleys have not paid their share of the bills since the latter part of 1982.

The 1981 agreement was seemingly placed on low priority by all the parties involved, when they entered into another agreement in 1982 hereinafter unsurprisingly known as the "1982 Agreement." The 1982 agreement is not in dispute but explains in part the slow progression of the 1981 agreement; as CBI planned and developed the real estate referred to in the 1982 agreement during the years 1982-84.

Sometime during these years the parties James and Wilda T. Brawley developed marital difficulties and were separated and ultimately divorced on or about 27 February 1984. The ownership of the inherited property which comprises the present action then emerged as a major dispute, as defendant Wilda T. Brawley alleged and still so alleges that plaintiff James Brawley has no interest in the property, equitable nor legal. It is, however, a matter of record that title to the property is held solely in the name of defendant Wilda T. Brawley.

Soon thereafter, on or about 10 April 1984, Ralph A. Kiger received a Notice of Special Meeting of Shareholders of Cedar Crest, Inc., which was called by Wilda T. Brawley; the purpose as he later discovered being to dissolve Cedar Crest. Ralph A. Kiger states by affidavit that "at all times, CBI and Cedar Crest have been ready, willing and able to proceed with the development of the property. CBI has formally demanded that the Brawleys honor the 1981 agreement." After having received the demand letter, James Brawley instituted this declaratory judgment action, on 25 September 1984, for an interpretation by the court concerning the agreement. On 8 March 1985, CBI filed a crossclaim against Mrs. Brawley, and a counterclaim against Mr. Brawley.

On 16 October 1986, the cause came on for hearing. The following motions were before the Court: (1) the motion for summary judgment of Cedar Crest, Inc. and CBI; (2) the motion for summary judgment of defendant Wilda T. Brawley, and motions to

dismiss for failure to state a claim, and, alternative motion for summary judgment. Defendant CBI's motion for summary judgment was granted on the crossclaim and counterclaim and the parties were ordered to specifically perform the written contract entered into by them on 10 March 1981. From this order defendant Wilda T. Brawley appeals. On 21 November 1986, plaintiff, James O. Brawley, Jr. took a voluntary dismissal without prejudice of this action.

*Bell, Davis & Pitt, P.A., by Walter W. Pitt, Jr. and Stephen M. Russell, for defendant appellant.*

*Womble Carlyle Sandridge & Rice, by Michael E. Ray and Thomas L. Nesbit, for defendant appellee.*

JOHNSON, Judge.

Defendant's appeal presents three questions for review; whether the trial court erred in granting defendant CBI's (hereinafter known as appellee) motion for summary judgment on its crossclaim and counterclaim for specific performance of the contract; whether the trial court erred in denying defendant Wilda Brawley's (hereinafter known as appellant) motion to dismiss for failure to state a claim and alternative motion for summary judgment; and whether the trial court erred in denying appellant's motion for summary judgment. We find no error and affirm.

I

Summary judgment is a device whereby judgment is rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. *Rose v. Guilford County*, 60 N.C. App. 170, 298 S.E. 2d 200 (1982); G.S. 1A-1, Rule 56(c). When the only issues to be decided are issues of law, summary judgment is proper. *Wachovia Mortgage Co. v. Autry-Barker-Spurrier Real Estate, Inc.*, 39 N.C. App. 1, 249 S.E. 2d 727 (1978), *aff'd*, 297 N.C. 696, 256 S.E. 2d 688 (1979). It is also well-settled that the party moving for summary judgment has the burden of establishing the absence of any triable issue of fact. *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 329 S.E. 2d 350 (1985); *Almond Grading Co. v. Shaver*, 74 N.C. App. 576, 329 S.E. 2d 417 (1985).

In reviewing appellant's first Assignment of Error, that the trial court's grant of appellee's motion for summary judgment and order of specific performance were improper, we must determine whether appellee has presented sufficient evidence to establish a valid and enforceable contract between the parties and that no defenses exist which will defeat enforceability. If appellee satisfies these tests, it will have carried its burden of "establishing the absence of any triable issue of fact" thereby entitling it to a grant of its summary judgment motion. *Almond, supra.*

Appellee has consistently contended and has asserted in an affidavit by Ralph Kiger that it is entitled to a grant of summary judgment for the following reasons: (1) On 10 March 1981 the parties executed the 1981 agreement; (2) Mrs. Brawley read over the agreement and assented to its terms by signing; (3) the document in question states that Exhibit A was attached to it; (4) the method for determining costs was to be calculated in accordance with CBI's accounting system in use in 1981, evidenced in Exhibit A, and fully explained to Mr. Brawley who acted as representative for Mrs. Brawley during several meetings with Mr. Kiger; and (5) the 1981 agreement is a binding and complete contract with or without the inclusion of Exhibit A.

## II

The law generally does not dictate the contract terms to which parties may agree but does require that in order to constitute a valid and enforceable contract there must be an agreement of the parties upon the essential terms of the contract, definite within themselves or capable of being made definite. *Horton v. Humble Oil & Refining Co.*, 255 N.C. 675, 122 S.E. 2d 716 (1961).

It is well-settled in North Carolina that a contract will not be held unenforceable because of uncertainty if the intent of the parties can be determined from the language used, construed with reference to the circumstances surrounding the making of the contract, and its terms reduced to a reasonable certainty. *Goodyear v. Goodyear*, 257 N.C. 374, 126 S.E. 2d 113 (1962); *Childress v. Abeles*, 240 N.C. 667, 84 S.E. 2d 176 (1954). In addition, where the language used in the contract is clear and unambiguous, the intention of the parties is to be gathered from the face of the contract. *Goodyear, supra* at 380, 126 S.E. 2d at 118.

Upon the evidence ascertained by the court, it is evident that a valid and enforceable agreement was reached between the parties on 10 March 1981. The essential terms of consideration, development of the property in exchange for monetary compensation, and mutual assent evidenced by the reading and signing of the agreement by all the parties after substantial negotiation, are apparent from the face of the agreement and create no triable issue. However, appellee is faced with appellant's contention that the 1981 agreement is unenforceable because Exhibit A, which is no longer in existence, contained essential terms for determining costs and "*was never shown* or made part of the offer to Mrs. Brawley."

Appellant's assertion is at best unconvincing and at worst groundless. Appellant signed the 1981 agreement which within its body contained a statement that Exhibit A was attached to the agreement, to wit: "Costs shall be determined in accordance with CBI's accounting system *and* as set forth in Exhibit A *attached hereto . . .*" Where a contract sets the method for determining the price or costs and the costs are determined according to that method, the contract is complete and sufficiently definite in that respect. The exact amount need not be stated in the agreement in order that a contract be sufficiently certain as to price. 17 Am. Jur. 2d, Contracts sec. 82. This agreement cannot fail for lack of the essential price term because a specific method for determining costs, appellee's 1981 accounting system, was in existence and set forth in Exhibit A. In *Howell v. Allen & Co.*, a case inapposite to our facts, the contract failed for lack of the essential price term or any method for determining it, for this Court has held that an agreement which leaves the price for future determination of the parties is not binding. 8 N.C. App. 287, 174 S.E. 2d 55 (1970).

The parties' understanding of the 1981 agreement as it referred to costs is further evidenced by an affidavit submitted by Ralph A. Kiger on 9 October 1986. In it he states that Exhibit A was a computer printout sheet that showed the manner in which CBI had allocated costs on a project similar to that undertaken by the Brawleys. Because Exhibit A no longer exists, Kiger attached to his affidavit a true and accurate copy of another computer printout sheet similar to Exhibit A incorporated by reference as Exhibit L. Finally, Kiger states that the understanding and agreement as to the method for determining costs of the 1981 agree-

ment is identical to that used to calculate costs in connection with the development of the real estate under the aforementioned fully performed 1982 agreement.

The 1981 agreement further provides for the distribution of profits and the sharing of costs in the following manner:

> As each condominium unit is sold by the Company, CBI will be paid its costs as calculated pursuant to the second paragraph of this Article 3, and the Company will also pay the costs incident to the sale of each unit. The balance remaining from the sale of said unit shall be termed "profit" and shall accrue to the benefit of the Company. When all of the units in a particular phase have been sold and the legal title to that particular phase has been transferred by the Company to the Homeowner's Association (or other applicable entity), the profit (if any) for that particular phase shall at that time be divided and distributed 50% to the Brawleys and 50% to CBI. As to each distribution of profit that is made as aforesaid, the parties hereto agree that the Brawleys shall allocate to their share of each such distribution the value of the land in the particular phase for which the distribution of profit is being made. The parties hereto hereby acknowledge and agree that the present value of the Property is $20,000.00 per acre, and that shall continue to be the value of the Property until construction of the aforesaid first phase begins; thereafter, the value of the Property shall appreciate no more and no less than 12% per year until all of the Property has been developed and sold, as aforesaid, or this Agreement terminates as hereinafter provided, whichever occurs first. . . .

After having assented to the terms of the agreement which states that Exhibit A is attached thereto, by signing her name to the agreement, appellant may not successfully advance as a defense that the contract fails because Exhibit A has since been lost. Therefore, we find that appellee CBI sufficiently met its burden by establishing the existence of a valid and enforceable contract and was correctly granted its motion for summary judgment.

### III

In her second Assignment of Error, appellant contends that the trial court erred when it denied her motion to dismiss for failure to state a claim and alternative motion for summary judgment. Again, we do not agree. A complaint should be dismissed for failure to state a claim where it is apparent that plaintiff (cross and counterclaimant under our facts) is entitled to no relief under any statement of facts which could be proven, more specifically, when there is an absence of law to support the claim asserted, a want of facts sufficient to establish a good claim, or some defense which will necessarily defeat the claim. *Orange County v. N.C. Dept. of Transp.*, 46 N.C. App. 350, 265 S.E. 2d 890, *cert. denied*, 301 N.C. 94 (1980). Clearly, appellee's crossclaim does not fit this category of cases. In its crossclaim against appellant, CBI presented a written contractual agreement which listed in particular detail the rights and duties of the parties. Such agreement bore Mrs. Brawley's signature, a copy of which was attached to the complaint. Further, CBI alleged that it has spent substantial amounts of time and money in planning and preparing for the development of the property. Such efforts have been approved by the Brawleys who began performance under the contract but later ceased performance. CBI has requested, orally and in writing, that Mr. and Mrs. Brawley comply with their obligations under the 1981 agreement in order to enable CBI to proceed with its contractual obligations. Because of the Brawleys' refusal, CBI has remained unable to fulfill its obligations under the 1981 agreement.

The defenses alleged by appellant in her answer do not defeat contract enforceability. Those advanced basically include allegations levied against Mr. Brawley, i.e., that he fraudulently procured her signature, that he did not request equitable distribution incident to their divorce and property settlement, that he is unentitled to any rights under the 1981 agreement, and that the agreement was not acknowledged before a certifying officer in violation of N.C.G.S. 52-10(a). These defenses have no bearing upon the enforceability of the 1981 agreement as concerns CBI; further N.C.G.S. 52-10(a) is inappropriately applied to the case *sub judice*, as it governs contracts between husband and wife and was not intended to affect contracts entered between husband, wife and third parties. *Jackson v. Beard*, 162 N.C. 105, 78 S.E. 6 (1913).

Brawley v. Brawley

The alternative motion for summary judgment was also properly denied. As previously noted when appellee's motion for summary judgment was considered, it is incumbent upon the party asserting the motion to establish the absence of any triable issue of fact and that he is entitled to judgment as a matter of law. *Almond, supra.* Appellant bases this motion upon the contention that the 1981 agreement is unenforceable because "all of the terms of the alleged contract were never revealed to her, to wit Exhibit A which allegedly contained appellee's method for determining its costs."

First, we reiterate the undisputed fact that appellant signed the agreement which states within its body in Article 3 that Exhibit A is attached to the contract. She now contends the term of cost contained within was never revealed to her. This inconsistency has remained unexplained and we must adhere to the rule that where the language of a contract is plain and unambiguous its construction is a matter of law for the court. Never does appellant contend that she understood the provision to have a meaning contrary to that of appellee which would defeat the essential "meeting of the minds" and thus nullify the contract. *Industrial Distributors, Inc. v. Mitchell,* 255 N.C. 489, 122 S.E. 2d 61 (1961). She instead contends that the method for determining costs was never communicated to her, although she signed an agreement which states the opposite. We find this contention untenable and hold that the appellant was not entitled to summary judgment as she did not establish a clear defense to contract enforceability and entitle herself to judgment as a matter of law.

IV

In light of our prior discussion on appellant's alternative motion for summary judgment we find a consideration of her third Assignment of Error that her second summary judgment motion was improperly denied wholly unnecessary. It is for the foregoing reasons that we affirm the ruling of the trial court.

Affirmed.

Judges ARNOLD and PARKER concur.