AUGUSTA HOMES, INC., Plaintiff,
v.
DAVID AND VALERIE FEUERSTEIN, Defendants.
No. COA08-1456
Court of Appeals of North Carolina
Filed August 18, 2009
This case not for publication
James, McElroy & Diehl, P.A., by Richard B. Fennell and John S. Arrowood, for Plaintiff.
Eisele, Ashburn, Greene & Chapman, P.A., by John D. Greene, for Defendants.
STEPHENS, Judge.

I. Procedural History
Plaintiff Augusta Homes, Inc. filed a complaint against Defendants David and Valerie Feuerstein on 15 November 2005 alleging breach of contract. On 30 December 2005, Defendants filed an answer denying liability, asserting affirmative defenses, and moving to dismiss the complaint. The case was tried by a jury during the 24 March 2008 term of Iredell County Superior Court. At the close of Plaintiff's evidence and again at the close of all the evidence, Defendants moved the trial court for directed verdict pursuant to N.C. Gen. Stat. § 1A-1, Rule 50(a). The trial court denied both motions.
On 26 March 2008, the jury returned a verdict finding that Plaintiff and Defendants had entered into a contract, that Defendants had breached the contract by nonperformance, and that Plaintiff was entitled to recover $150,000 from Defendants for breach of contract. After the jury returned its verdict, Defendants moved the trial court for judgment notwithstanding the jury's verdict pursuant to N.C. Gen. Stat. § 1A-1, Rule 50(b)(1). The trial court denied the motion. From the trial court's denial of Defendants' motions for directed verdict and judgment notwithstanding the verdict, Defendants appeal.

II. Factual Background
On or about 3 June 2003, Augusta Homes, Inc. ("Augusta Homes") sold Lot 1129 The Point Subdivision, Iredell County, North Carolina ("Property"), to the M. Jane McLean Trust ("McLean Trust"), M. Jane McLean as Trustee. At the time of the sale, Augusta Homes and the McLean Trust also entered into a separate "Memorandum of Option" agreement which provided that the McLean Trust granted to Augusta Homes an option to repurchase the Property "at the latest, at 5:00 P.M. on April 30, 2004[,]" said option "to be null and void unless Augusta [Homes] has, on or before 5:00 P.M. on May 10, 2004, caused to be filed of record in the Iredell County Registry written notice of exercise[.]" The Memorandum further stated that "[t]he option herein granted may be exercised if for any reason the McLean Trust and Augusta [Homes] do not on or before April 30, 2004, enter into a contract pursuant to which Augusta [Homes] agrees to construct on the Property for the Mclean Trust a residence[.]"
The McLean Trust never commenced construction of a home on the Property. Mr. Kenneth John Wrench, president of Augusta Homes, testified that he gave the McLean Trust a 90-day extension of time beyond what was originally stated in the Memorandum. Mr. Wrench subsequently wrote a letter to the McLeans, dated 8 April 2005, stating:
Thank you for taking the time to talk with me last week regarding Lot 1129, at The Point. I just wanted to outline our Agreement per our phone conversation.
1. Your intentions are to build a home on that lot.
2. We agreed that construction of the home will start by September 30, 2005. . . .
3. If construction has not begun by September 30, 2005, Augusta Homes will not extend any more time to build, and will repurchase the lot back as originally agreed within 30 days at original sales price.
We welcome the opportunity to start planning your new home at your earliest convenience. Please call me next week to further discuss your schedule.
Thank you again for your continued cooperation.
Mr. Wrench further testified that since the McLeans could not sell their house in Michigan "and I wasn't giving them any more extensions as far as time[,]" the McLeans put the Property on the market.
On 21 May 2005, Defendants executed a "Vacant Lot Offer to Purchase and Contract[,]" offering to purchase the Property. The document was signed on 26 May 2005 by James N. McLean and M. Jane McLean as the sellers. This contract contained the following provisions:
1. Buyer has until 5:00 P.M. on May 27th to solidify relationship with Augusta Homes (builder). Up until this day and time buyer may cancel in writing if builder relationship is not satisfactory, and receive earnest money back. This contract may be placed as "Conditional" on the MLS until this date and time, and back-up offers may be received by seller.
. . . .
3. Buyer must contract with Augusta [H]omes to build home on Property. A preliminary contract will be executed by Augusta Homes and Buyer before closing on Property.
Augusta Homes and Defendants signed an Agreement on 27 June 2005 which provided as follows:
David & Valerie Feuerstein ("Buyer") are under contract to purchase Lot 1129 in The Point, Mooresville, NC ("Lot"). Augusta Homes ("Builder") had sold the lot previously to the current seller with the agreement that August[a] Homes must build any home built on the lot.
In order to allow the current seller of the Lot to re-sell the Lot to Buyer, the stipulation that Augusta Homes must build a home on the Lot remains. Plans for construction of a custom home must commence immediately after closing, with actual construction start planned for September, 2005.
In consideration of Builder releasing the current seller to sell Lot to Buyer, Buyer acknowledges that they must use Augusta Homes to build their home on the lot and start construction by September 30, 2005. The contract to construct will be a Cost-Plus 15% contract. Such form of contract will be agreed to and executed at a later date. The intent of this Agreement is to bind Buyer to using Augusta Homes as the Builder for Lot 1129 in The Point.
Builder Contract Summary: Actual Construction Contract will supersede this Agreement.
The building contract will be a cost-plus contract, with Builder supplying all Invoices for Buyer review. Builder will mark-up [sic] actual costs by 15% for builder overhead and profit. In-house Supervision will be a cost item of $12,000 marked up 15% as well.
Crescent Communities Marketing Charges:
The 6% Crescent marketing charge will be handled in the following manner:
Builder must pay Crescent 6% marketing charge at time of home completion.
On 30 June 2005, the McLean Trust conveyed the Property by General Warranty Deed to Augusta Homes. On that same day, Augusta Homes conveyed the Property by General Warranty Deed to Defendants. The purchase price of the Property was $560,000. After closing, Defendants worked with Carolina Design Group, Inc. on the design of a house within a budget of $850,000 to $1,000,000. During July, August, and September, there were numerous meetings between Augusta Homes and Defendants to discuss the house, the design, and estimated costs. Based on designs drawn by Carolina Design Group, Augusta Homes gave Defendants two written cost estimates: the first for $1,252,000, plus or minus three percent, and the second for $1,050,000, plus or minus three percent.
After failing to agree on a contract price, Defendants offered the Property back to Augusta Homes for $700,000. Augusta Homes rejected the offer and Defendants subsequently sold the Property to a third party.

III. Discussion
By Defendants' assignments of error, Defendants assert that the trial court erred in denying Defendants' motions for directed verdict and judgment notwithstanding the verdict.
A motion for directed verdict is appropriately granted only when by looking at the evidence in the light most favorable to the nonmovant, and giving the nonmovant the benefit of every reasonable inference arising from the evidence, the evidence is insufficient for submission to the jury. A motion for judgment notwithstanding the verdict represents a renewal, after a verdict is issued, of a motion for directed verdict, and the standards of review for both motions are the same. . . . A trial court's decision to grant or deny a motion for directed verdict or a motion notwithstanding the verdict will not be disturbed on appeal absent an abuse of discretion. Crist v. Crist, 145 N.C. App. 418, 422, 550 S.E.2d 260, 264 (2001) (internal citations omitted). Defendants argue that Plaintiff offered insufficient evidence of the existence of an enforceable contract, breach of an enforceable contract, and damages. We disagree.

A. An Enforceable Contract
"A contract is `an agreement, upon sufficient consideration, to do or not to do a particular thing.'" Arndt v. First Union Nat'l Bank, 170 N.C. App. 518, 522, 613 S.E.2d 274, 278 (2005) (quoting N. & W. Overall Co. v. Holmes, 186 N.C. 428, 431, 119 S.E. 817, 818 (1923)). A contract "results from the concurrence of minds of two or more persons . . . . [I]ts legal consequences are not dependent upon the impressions or understandings of one alone of the parties to it. It is not what either thinks, but what both agree." Overall, 186 N.C. at 431-32, 119 S.E. at 818-19 (quotation marks and citation omitted). "`In the construction of a contract, the parties' intentions control, Cordaro v. Singleton, 31 N.C. App. 476, 229 S.E.2d 707 (1976)[,] and their intentions may be discerned from both their writings and actions.'" Arndt, 170 N.C. App. at 522, 613 S.E.2d at 278 (quoting Walker v. Goodson Farms, Inc., 90 N.C. App. 478, 486, 369 S.E.2d 122, 126, disc. review denied, 323 N.C. 370, 373 S.E.2d 556 (1988)).
Defendants first argue that the Agreement is unenforceable because it lacks sufficient consideration. Specifically, Defendants allege the following: (1) Augusta Homes' promise to release the McLean Trust was illusory as "the option [upon] which Plaintiff relies . . . had expired almost a full year before the events at issue in this action[,]" and (2) "the requirement to contract language in the `Vacant Lot' purchase agreement [] fails as consideration" because that agreement was "signed by James McLean and Jane McLean individually as `Sellers', [sic] not in the name of the McLean Trust which actually owned the property, or even as Trustee for the Trust[.]" However, "[D]efendants failed to plead affirmatively in their answer the defense[] of failure of consideration . . . as required by N.C. Gen. Stat. § 1A-1, Rule 8(c), and they thereby waive their right to assert [this] defense[]." Smith v. Hudson, 48 N.C. App. 347, 352, 269 S.E.2d 172, 176 (1980); see N.C. Gen. Stat. § 1A-1, Rule 8(c) (2007) ("Affirmative defenses.  In pleading to a preceding pleading, a party shall set forth affirmatively . . . failure of consideration. . . .").
Defendants further attack the Agreement by contending that the Agreement was only "an agreement to make an agreement in the future" and that no contract was ever made because there was no "meeting of the minds on the essential elements of the contract[.]" Defendants' argument is without merit.
"Generally when parties not under disability contract at arms' length on a lawful subject, the courts will give redress to the injured party for a wrongful breach." Boyce v. McMahan, 285 N.C. 730, 733, 208 S.E.2d 692, 695 (1974). "The law generally does not dictate the contract terms to which parties may agree but does require that in order to constitute a valid and enforceable contract there must be an agreement of the parties upon the essential terms of the contract, definite within themselves or capable of being made definite." Brawley v. Brawley, 87 N.C. App. 545, 549, 361 S.E.2d 759, 762 (1987), disc. review denied, 321 N.C. 471, 364 S.E.2d 918 (1988). "[A] contract will not be held unenforceable because of uncertainty if the intent of the parties can be determined from the language used, construed with reference to the circumstances surrounding the making of the contract, and its terms reduced to a reasonable certainty." Id. Additionally, where the language used in the contract is clear and unambiguous, the intention of the parties is to be gathered from the face of the contract. Goodyear v. Goodyear, 257 N.C. 374, 380, 126 S.E.2d 113, 118 (1962). "The heart of a contract is the intention of the parties." Wm. Muirhead Constr. Co. v. Hous. Auth. of Durham, 1 N.C. App. 181, 187, 160 S.E.2d 542, 547 (1968).
Defendants cite Boyce in support of their contention that the Agreement was merely an unenforceable "`contract to make a contract[.]'" Defendants' reliance on Boyce, however, is misplaced. In Boyce, the parties had executed a paper writing which stated, in part:
Whereas, Owner is desirous of developing said land into residential lots or tracts for the purpose of sale; and
Whereas, Developer desires to develop said tract of land into residential lots or tracts for the purpose of sale; and
Whereas the Owner And Developer, in order to effectuate the same, desire to enter into a preliminary agreement setting out the main features as to the desires of both parties and to execute a more detailed agreement at a later date;
. . . .
2. That the parties hereto agree to supplement this preliminary agreement by executing a more detailed agreement at some specific and subsequent date to be agreed to by the parties hereto.
Boyce, 285 N.C. at 731-32, 208 S.E.2d at 693-94. The North Carolina Supreme Court noted that "the writing itself shows its incompleteness by emphasizing its preliminary character. It expresses the desires of the parties but not the agreement of both." Id. at 734, 208 S.E.2d at 695. Because "[t]he writing itself carries the terms which destroy its efficacy as a contract[,]" id. at 735, 208 S.E.2d at 695, the Court held that the writing "is incomplete and insufficient to support either a decree of specific performance or damages for breach." Id. at 734-35, 208 S.E.2d at 695.
Unlike the writing in Boyce which "emphasiz[ed] its preliminary character[,]" id. at 734, 208 S.E.2d at 695, the Agreement in this case emphasizes the finality of the agreement stating, "[t]he intent of this Agreement is to bind [Defendants] to using Augusta Homes as the Builder for Lot 1129 in The Point." Furthermore, unlike the writing in Boyce which was "insufficient to support either a decree of specific performance or damages for breach[,]" id. at 734-35, 208 S.E.2d at 695, the Agreement in this case supports, at a minimum, damages for breach by mandating that Augusta Homes was to be paid 15% over actual costs for its services, including a $12,000 cost for "[i]n-house Supervision" which would be "marked up 15% as well." See Brawley, 87 N.C. App. at 550, 361 S.E.2d at 762 ("Where a contract sets the method for determining the price or costs and the costs are determined according to that method, the contract is complete and sufficiently definite in that respect. The exact amount need not be stated in the agreement in order that a contract be sufficiently certain as to price."). Accordingly, Defendants were not trapped by the Agreement in surprise contractual obligations that they never intended but, instead, intentionally entered into a binding contract that Defendants "must use Augusta Homes to build [Defendants'] home on the lot and start construction by September 30, 2005[,]" with the express accord that further documentation and negotiation regarding actual construction would be "agreed to and executed at a later date."
Defendants additionally contend that the Agreement does not address such essential terms as the final size of the proposed home; the final major features of the proposed home such as a basement, elevator, or a pool; the warranty to be given for the proposed home; the change order procedure to be used during construction of the proposed home; the payment terms to be used during the construction of the proposed home; and a dispute/claims procedure to be used during the contract execution. We conclude, however, that such terms were not essential to the formation of the binding contract that Defendants had to use Augusta Homes to build their home, but instead were only conditions of construction to be negotiated and agreed upon at a later date, per the Agreement.
It is evident that the Agreement in this case contains "the essential terms of the contract, definite within themselves or capable of being made definite[,]" Brawley, 87 N.C. App. at 549, 361 S.E.2d at 762, and, thus, that a valid and enforceable agreement was reached between the parties on 27 June 2005. The Agreement identifies the Property to be conveyed and states unequivocally that "[i]n consideration of [Augusta Homes] releasing the current seller to sell Lot to [Defendants], [Defendants] acknowledge[] that they must use Augusta Homes to build their home on the lot and start construction by September 30, 2005." The Agreement further mandates that Augusta Homes was to be paid 15% over actual costs for its services, including a $12,000 cost for "[i]n-house Supervision" which would be "marked up 15% as well." Moreover, mutual assent evidenced by the signing of the Agreement by all the parties is apparent from the face of the Agreement. See Thomco Realty, Inc. v. Helms, 107 N.C. App. 224, 228, 418 S.E.2d 834, 837 (1992) ("[A]n essential contractual term, mutual assent, is evidenced by the signatures of defendants."), disc. review denied, 332 N.C. 672, 424 S.E.2d 407 (1992). Accordingly, we hold that the Agreement was a valid and enforceable contract between the parties.

B. Breach of Contract
The elements of a breach of contract claim are (1) the existence of a valid contract, and (2) a breach of the contract's terms. Becker v. Graber Builders, Inc., 149 N.C. App. 787, 792, 561 S.E.2d 905, 909 (2002). As explained, supra, the Agreement here was a valid and enforceable contract. Furthermore, the evidence in the record established that Defendants did not "use[] Augusta Homes as the Builder for Lot 1129 in The Point[,]" as assented to in the Agreement but, instead, sold the Property to a third party in an unimproved state less than five months after acquiring it and kept the profit. This evidence was sufficient for submission to the jury on Augusta Homes' breach of contract claim and supports the jury's verdict that Defendants breached the Agreement, entitling Augusta Homes to recover damages. Tillis v. Calvine Cotton Mills, Inc., 251 N.C. 359, 365, 111 S.E.2d 606, 612 (1959) ("[W]here the breach of contract consists in preventing its performance, the party injured, on proper proof, may recover the profits he would have realized had the contract not been breached.").

C. Proof of Damages
"The burden of proving damages is on the party seeking them." Olivetti Corp. v. Ames Bus. Sys., Inc., 319 N.C. 534, 547, 356 S.E.2d 578, 586, reh'g denied, 320 N.C. 639, 360 S.E.2d 92 (1987). The burden is met by producing evidence that will allow the finder of fact to calculate the amount of damages with reasonable certainty. Id. at 547-48, 356 S.E.2d at 586. Evidence permitting only speculation is insufficient. McBride v. Apache Camping Ctr., Inc., 36 N.C. App. 370, 372, 243 S.E.2d 913, 915, cert. denied, 295 N.C. 550, 248 S.E.2d 727 (1978).
In this case, the Agreement provided that Augusta Homes would "mark-up [sic] actual costs by 15% for builder overhead and profit" and would charge a $12,000 cost for "[i]n-house Supervision[,]" which would be "marked up 15% as well." Additionally, Mr. Wrench testified that Defendants' budget was "a million dollars for the house only[,]" and Defendant David Feuerstein testified that $1,000,000 was the top of his budget range for construction of the house. This evidence was sufficient to allow the jury to calculate the damages award of $150,000 with reasonable certainty, based on the undisputed formula contained in the Agreement of a 15% mark-up for builder overhead and profit on a house costing $1,000,000 to construct.
For the foregoing reasons, we conclude that the trial court did not abuse its discretion in denying Defendants' motions for directed verdict and judgment notwithstanding the verdict. Accordingly, the trial court's order is
AFFIRMED.
Judges BRYANT and GEER concur.
Report per Rule 30(e).