Epic Chophouse, LLC v. Morasso, 2020 NCBC 63.

STATE OF NORTH CAROLINA

IREDELL COUNTY

EPIC CHOPHOUSE, LLC;
RICHARD D. MACK; and LARRY
SPONAUGLE,

        Plaintiffs,

v.

JAMES A. MORASSO; JAM
RESTAURANT GROUP, INC.;
CHILLFIRE GRILL, LLC; and
WEBB CUSTOM KITCHEN, LLC,

        Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CVS 2372

**ORDER AND OPINION ON
CROSS-MOTIONS FOR PARTIAL
SUMMARY JUDGMENT**

1. In 2009, Richard Mack, Larry Sponaugle, and James Morasso formed Epic Chophouse, LLC ("Epic") to open a restaurant by the same name. After a falling out, Mack and Sponaugle voted to remove Morasso as a member, asserting that Epic's operating agreement gave them authority to do so. In this action, Epic, Mack, and Sponaugle ("Plaintiffs") seek a declaratory judgment that Morasso is no longer a member. They also accuse Morasso of misconduct—breaching his fiduciary duties, for example—and demand damages from him and three entities he controls.

2. Morasso insists that his removal was not lawful and that he remains a member of Epic. Denying any misconduct, Morasso asserts that he is entitled to damages for payments that he should have received but that Epic has withheld since his purported removal. Morasso also seeks to dissolve Epic and wind up its affairs.

3. The parties have filed cross-motions for partial summary judgment, centered on the validity of Morasso's removal. For the following reasons, the Court

**GRANTS** in part and **DENIES** in part Morasso's motion and **DENIES** Plaintiffs' motion.

*David P. Parker, PLLC, by David P. Parker, for Plaintiffs Epic Chophouse, LLC, Richard D. Mack, and Larry R. Sponaugle.*

*Sellers, Ayers, Dortch & Lyons, P.A., by Brett Dressler and Michelle Massingale Dressler, for Defendants James A. Morasso, JAM Restaurant Group, Inc., Chillfire Grill, LLC, and Webb Custom Kitchen, LLC.*

Conrad, Judge.

I.
BACKGROUND

4. The Court does not make findings of fact when ruling on motions for summary judgment. The following background, describing the evidence and noting relevant disputes, is therefore intended only to provide context for the Court's analysis and ruling.

5. Mack, Sponaugle, and Morasso are Epic's only members. It is undisputed that they have held equal interests in the company since at least 2013. (*See* Pls.' Ex. B, ECF No. 44.2.)[1]

6. After forming Epic, the three began negotiating the terms of an operating agreement. Their first effort, with help from an attorney, was a bust. (*See* Dep. Mack 24:5–9, 50:14–20, ECF No. 40.2; Dep. Sponaugle 31:5–32:7, 33:18–20, ECF No. 40.3.) They disagreed about several things, including the process for terminating or forcing

---

[1] As part of the claim for declaratory judgment, the complaint expresses confusion about whether JAM Restaurant Group, Inc. (one of Morasso's entities) is or was one of Epic's members. (*See* Compl. ¶¶ 86, 94, ECF No. 3.) Neither side has raised that issue, and it is not clear whether it presents a live dispute. (*See, e.g.*, Countercl. ¶ 1, ECF No. 12; Pls.' Reply to Countercl. ¶ 1, ECF No. 22.) In any event, the undisputed evidence related to the cross-motions confirms that Epic's three equal members are Mack, Sponaugle, and Morasso.

withdrawal of a member. According to Mack, "[t]here was a lot of discussion about withdrawal, termination, cause, you know, a lot of things like that that we could not agree on." (Dep. Mack 40:3–5; *see also* Dep. Mack 24:13–25:17, 41:11–14, 42:13–19.)

7.   Their second effort fared a bit better. Mack took the pen and turned out a slim, three-page draft, which became the basis for Epic's operating agreement. (*See* Dep. Mack 24:7–8; Dep. Sponaugle 33:16–17.) In its final form, the operating agreement gives equal voting rights to Mack, Sponaugle, and Morasso. (*See* Operating Agrmt. ¶ 2, ECF No. 40.1.) They agreed, though, that "major decisions" and "financial obligations" would require unanimity and that "[n]o partner may use the company as leverage for any personal or other means without full consent of the other two partners." (Operating Agrmt. ¶¶ 1, 9.f., 9.g.) As to day-to-day restaurant operations, the agreement doesn't say much beyond naming Sponaugle as "a manager" and Morasso as "full time General Manager." (Operating Agrmt. ¶ 9.b.)

8.   Paragraph 4 deals with member withdrawal, a topic that had continued to be contentious during negotiations over Mack's draft. The paragraph in its entirety consists of a title and a five-word sentence fragment: "Buy/Sell. Involuntary withdrawal with cause only." (Operating Agrmt. ¶ 4.) Cause is not defined. In Mack's words, the language "had to be general enough so that we could all sign it, because we couldn't come to terms on an actual -- all the definitions of all the cause that were actually outlined in" earlier drafts. (Dep. Mack 41:25–42:12; *see also* Dep. Mack 42:20–43:1.)

9.     Over time, Mack and Sponaugle became unhappy with Morasso. They have offered evidence (disputed, of course) that he shirked his duties as General Manager, became involved with competing restaurants, and switched Epic's food vendor over Sponaugle's objection. (*See, e.g.*, Dep. Sponaugle 75:8–76:17, 79:8–20; Pls.' Ex. C at 1, ECF No. 44.3.) In September 2018, Mack and Sponaugle voted to remove Morasso as a member "for cause" under paragraph 4 of the operating agreement. (Pls.' Ex. C at 2–3.)

10.     A few days later, Plaintiffs filed this suit. Although the complaint lists several claims for relief, only the claim for declaratory judgment is relevant here. Plaintiffs ask the Court to declare that Morasso is not a member of Epic and to determine how much the company must pay him for the redemption of his interest. (*See* Compl. ¶¶ 87–91, 94.)

11.     Morasso alleges that his removal was "baseless." (Countercl. ¶ 22.) By counterclaim, he seeks to dissolve Epic. (*See* Countercl. ¶ 27.) He has also asserted a claim for breach of contract, alleging that Epic's members agreed that each "would receive $4,000 bi-weekly in guaranteed payments" from the company. (Countercl. ¶ 29.) According to Morasso, he has not received any payments from Epic since his purported removal. (*See* Countercl. ¶ 32.)

12.     After the close of discovery, Morasso moved for partial summary judgment, limited to the claim for declaratory judgment and his own counterclaim for breach of contract. (ECF No. 39.) Plaintiffs responded that they, not Morasso, are entitled to summary judgment. (ECF Nos. 42, 43.) Their motion is captioned as one for full or

partial summary judgment, but neither the motion nor the accompanying brief addresses all claims or issues in the case.  (*See* ECF Nos. 43, 44.)  It appears that the cross-motion is limited to the claims addressed by Morasso, which is consistent with representations made by Plaintiffs' counsel at the hearing.  With the benefit of full briefing and a hearing on July 28, 2020, the cross-motions are now ripe for determination.

## II.
## LEGAL STANDARD

13.    Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. R. Civ. P. 56(c).  In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, taking its evidence as true and drawing inferences in its favor.  *See In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008).

14.    The moving party "bears the initial burden of demonstrating the absence of a genuine issue of material fact." *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 579, 573 S.E.2d 118, 124 (2002).  If the moving party carries this burden, the responding party "may not rest upon the mere allegations or denials of his pleading," N.C. R. Civ. P. 56(e), but must instead "come forward with specific facts establishing the presence of a genuine factual dispute for trial," *Liberty Mut. Ins.*, 356 N.C. at 579, 573 S.E.2d at 124.  A "genuine issue" exists when " 'it is supported by substantial evidence,' which is that amount of relevant evidence necessary to persuade a

reasonable mind to accept a conclusion." *Id.* (quoting *DeWitt v. Eveready Battery Co.*, 355 N.C. 672, 681, 565 S.E.2d 140, 146 (2002)).

## III.
## ANALYSIS

15.    The key question here is whether Morasso is a member of Epic. Plaintiffs argue that he is not. They contend that Morasso breached his contractual and fiduciary duties, entitling Mack and Sponaugle to remove him for cause under paragraph 4 of the operating agreement. (*See* Pls.' Mem. in Supp. 4–6, ECF No. 44.) Plaintiffs therefore ask the Court to declare that Morasso is not a member of Epic. They also seek summary judgment as to Morasso's counterclaim on the theory that he may not demand payment if he is no longer a member.

16.    Morasso argues that paragraph 4 is so vague and indefinite that it cannot be enforced. According to Morasso, Epic's members did not have a meeting of the minds as to what "cause" meant for involuntary withdrawal of a member and purposely chose not to define the term in the operating agreement. (*See* Def.'s Mem. in Supp. 16–20, ECF No. 40.) On that basis, Morasso argues that his removal was ineffective, that he continues to be a member, and that he is entitled to partial summary judgment.

17.    "The essence of any contract is the mutual assent of both parties to the terms of the agreement so as to establish a meeting of the minds." *Snyder v. Freeman*, 300 N.C. 204, 218, 266 S.E.2d 593, 602 (1980). When an agreement is "so vague and indefinite that it is not possible to collect from it the full intent of the parties," then there was no true meeting of the minds, and the agreement "is void." *Holder v. Home*

*Mortg. Co.*, 214 N.C. 128, 133, 198 S.E. 589, 591–92 (1938) (citation and quotation marks omitted); *see also Williamson v. Miller*, 231 N.C. 722, 727–28, 58 S.E.2d 743, 747 (1950).

18.    The test for definiteness is whether "the court can ascertain to a reasonable degree of certainty what [the parties] intended by their agreement." *F. Indus., Inc. v. Cox*, 45 N.C. App. 595, 599, 263 S.E.2d 791, 793 (1980).  Contract terms must be either "definite within themselves or capable of being made definite." *Micro Cap. Invs., Inc. v. Broyhill Furniture Indus., Inc.*, 221 N.C. App. 94, 100, 728 S.E.2d 376, 381 (2012) (quoting *Brawley v. Brawley*, 87 N.C. App. 545, 549, 361 S.E.2d 759, 762 (1987)), *aff'd*, 366 N.C. 371, 736 S.E.2d 172 (2013) (per curiam).  Our law "does not favor the destruction of contracts on account of uncertainty," so to preserve a contract when possible, the court "should attempt to determine the intent of the parties from the language used, construed with reference to the circumstances surrounding the making of the contract." *Welsh v. N. Telecom, Inc.*, 85 N.C. App. 281, 290, 354 S.E.2d 746, 751 (1987) (citations and quotation marks omitted); *see also Brawley*, 87 N.C. App. at 549, 361 S.E.2d at 762.

19.    Usually, whether there was a meeting of the minds is a question of fact.  But the facts in this case are not disputed.  As used in paragraph 4, "cause" is just a reason.  The operating agreement does not say *which* reasons are enough for two members to remove a third without his consent.  In theory, the members could have come to a common understanding that would have given shape to the term.  But Plaintiffs concede that "no Member contended that there was ever a 'meeting of the

minds' as to what 'cause' meant." (Pls.' Mem. in Supp. 7; *see also* Pls.' Mem. in Supp. 3 (noting the members' "inability to agree on what a Buy-Sell would look like").)

20. All the testimony confirms as much. Sponaugle testified that he understood paragraph 4 to mean "[y]ou have to do something to get kicked out," but he could not describe the "something" any further. (Dep. Sponaugle 35:10–11.) Mack, the primary drafter, repeatedly testified that the members disagreed "about withdrawal, termination, cause," and related terms. (Dep. Mack 40:3–5; *see also* Dep. Mack 24:15–17, 41:2–14.) They never worked out those disagreements. Instead, they shelved the issue, hoping never to return to it in the future. (*See* Dep. Mack 42:13–43:1.) As Mack put it, the language in paragraph 4 "had to be general" precisely because the members "couldn't come to terms on . . . all the definitions of all the cause that were actually outlined in" earlier drafts. (Dep. Mack 42:3–7.) In other words, the members had no common understanding of the kinds of cause that would allow involuntary withdrawal, and they purposely avoided defining the term for that reason.

21. Plaintiffs contend that paragraph 4 is enforceable—even without a meeting of the minds—because the parties "are left with how the law would interpret" it. (Pls.' Mem. in Supp. 7.) Not so. When the parties have not agreed to the same thing in the same sense, they have not made a contract at all, leaving nothing for a court to interpret. "[N]either the court nor the jury can make an agreement for the parties." *Holder*, 214 N.C. at 133, 198 S.E. at 592 (citation and quotation marks omitted); *see also Boyce v. McMahan*, 285 N.C. 730, 734, 208 S.E.2d 692, 695 (1974) ("The reason for this rule is that there would be no way by which the court could determine what

sort of a contract the negotiations would result in . . . ." (citation and quotation marks omitted)).

22. Furthermore, the law offers no suitable definition of "cause" when it comes to terminating someone's ownership interest in a company. The statutes governing LLCs do not have a default rule to allow removal of a member for cause. And Plaintiffs do not suggest any persuasive reason to borrow a definition from contexts, such as employment, that are unlike LLC membership or analogous types of corporate ownership. Even if Epic's members *could have* borrowed an otherwise incongruous definition, the undisputed evidence makes clear that they intended not to define "cause" at all.

23. In short, Plaintiffs admit, and the undisputed evidence shows, that there was no meeting of the minds as to the reasons that would allow some of Epic's members to remove another. Paragraph 4 of the operating agreement is therefore indefinite and unenforceable. *See Rider v. Hodges*, 255 N.C. App. 82, 86–88, 804 S.E.2d 242, 246–48 (2017) (affirming summary judgment based on party admissions that "there was never a meeting of the minds").

24. Given this conclusion, the Court grants summary judgment in favor of Morasso as to the claim for declaratory judgment. The effort to remove Morasso under paragraph 4 was ineffective, and Plaintiffs have not shown that he has ceased to be a member by operation of law or for any other reason. *See* N.C.G.S. § 57D-3-02(a) (addressing cessation of membership due to death, bankruptcy, and

similar events). Thus, Morasso remains a member, and the Court shall enter a declaration to that effect.

25. Morasso has not carried his burden as to his counterclaim for breach of contract, however. It is plausible, perhaps likely, that Morasso did not receive payments that he should have after Mack and Sponaugle purported to remove him as a member. Evidence is lacking, though. Morasso's brief does not cite any evidence of withheld payments or their amount. *See* Business Court Rule 7.5 (requiring parties to "include a pinpoint citation to the relevant page" of supporting materials). Morasso, in seeking offensive summary judgment on his own claim, must show "that there are no gaps in his proof." *Kidd v. Early*, 289 N.C. 343, 370, 222 S.E.2d 392, 410 (1976). He has not done so. Summary judgment is therefore not appropriate as to this claim.

26. Finally, the Court denies Plaintiffs' motion for summary judgment. Their arguments rest on the premise that Morasso is not a member of Epic. Having failed to show that, they are not entitled to the declaration they seek or to summary judgment on Morasso's counterclaims.[2]

---

[2] Plaintiffs' brief raises other issues that are not properly before the Court. For example, Plaintiffs request the appointment of a referee to value the members' interests if Epic is dissolved. (*See* Pls.' Mem. in Supp. 13 n.29, 18.) The request is premature because the Court has not ordered dissolution, which Plaintiffs concede "is not before the Court on Summary Judgment." (Pls.' Mem. in Supp. 2 n.2.) In addition, Plaintiffs ask the Court to confirm that Mack and Sponaugle have "authority to file for bankruptcy if economic circumstances merit it." (Pls.' Mem. in Supp. 18.) That hypothetical question is not even the subject of any pending claim.

## IV.
## CONCLUSION

27. For these reasons, the Court **DENIES** Plaintiffs' motion for summary judgment.

28. The Court **GRANTS** in part and **DENIES** in part Morasso's motion for summary judgment as follows:

    a. The Court **GRANTS** summary judgment in favor of Morasso as to Plaintiffs' claim for declaratory judgment. The Court **DECLARES** that Morasso is a member of Epic. Because the attempt to remove Morasso was ineffective, the Court also **DISMISSES** Plaintiffs' claim to the extent it seeks a determination of the amount Epic must pay him for the redemption of his interest.

    b. The Court **DENIES** the motion for summary judgment as to Morasso's counterclaim for breach of contract.

29. As stated in the case management order, the parties shall complete their final mediation within thirty days of this Order and Opinion. (*See* ECF No. 35.)

**SO ORDERED**, this the 8th day of September, 2020.

        /s/ Adam M. Conrad
        Adam M. Conrad
        Special Superior Court Judge
        for Complex Business Cases